THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CURTIS CROFT *et al.*, Defendants-Appellants.

First District (6th Division)   Nos. 1—87—2083, 1—87—2222, 1—87—2223 cons.

Opinion filed March 15, 1991.

498

Karen Daniel, of State Appellate Defender's Office, of Chicago, for appellant Curtis Croft.

Earl L. Washington, of Chicago, for appellants Kevin Campbell and Alonzo Woodard.

John O'Malley, State's Attorney, of Chicago (Renee Goldfarb and David R. Butzen, Assistant State's Attorneys, of counsel), for the People.

JUSTICE EGAN delivered the opinion of the court:

The defendants, Curtis Croft, Kevin Campbell and Alonzo Woodard, were indicted with Demetrius Henderson for the aggravated kidnapping, aggravated sexual assault, and the murder of 16-year-old Kimberly Boyd. They were also indicted for armed violence based on the acts performed against Boyd. Croft, Woodard and Campbell waived a jury; Croft's bench trial was severed from the joint bench trial of Woodard and Campbell. Pursuant to an agreement of the parties, the defendants' bench trials were tried together with Henderson's jury trial. It was expressly understood that evidence per-

taining to one defendant would not be admissible against the code-fendants.

The judge found Campbell and Woodard guilty of aggravated criminal sexual assault and sentenced them to 28 years' imprisonment. Croft was found guilty of murder, aggravated kidnapping and aggravated criminal sexual assault and sentenced to imprisonment for natural life for murder, 45 years for aggravated criminal sexual assault and 10 years for aggravated kidnapping. Croft's sentences were to run concurrently.

Henderson was found guilty of all offenses charged and was sentenced to death. His appeal is currently pending before the Illinois Supreme Court.

Woodard filed appeal number 1—87—2222; Campbell filed appeal number 1—87—2223; and their appeals were consolidated upon their motion. Croft filed appeal number 1—87—2083; and on the State's motion, Croft's appeal was consolidated with the appeals of Woodard and Campbell.

Woodard and Campbell contend that the State failed to prove them guilty beyond a reasonable doubt; that the judge abused his discretion in hearing their bench trials simultaneously with the bench trial of Croft and the jury trial of Henderson; and that their sentences were excessive. Croft's sole contention is that the judge erred in considering the statements of Henderson, Woodard and Campbell at Croft's sentencing hearing.

On July 13, 1986, the body of 16-year-old Kim Boyd was discovered in the alley behind 6039 South Carpenter Street in Chicago. An autopsy performed by Dr. Mitre Kalekar revealed that Boyd had suffered over 40 stab wounds to the head, face, neck, hands, abdomen, back and buttocks. She also had bruises on her face, elbow and back, along with a broken right thigh bone and several fractured ribs. The skin on her face and right hip had experienced "skin slippage," which could have been caused by coming into contact with the hot metal underside of a car. The cause of death was multiple stab wounds, which Dr. Kalekar described as defensive wounds.

Seventeen-year-old Wendy Herron testified that at 8 p.m. on Saturday, July 12, 1986, she went to dinner with Croft and their infant child, Yolanda Harris and Demetrius Henderson, and their baby. After dinner, they drove to Croft's residence at 6736 South Bell. They talked and listened to music until 1 or 2 a.m. Henderson and Croft then dropped Harris and the two children off and returned to Croft's home. On the way back to Croft's home, they were joined by Alonzo and Anthony Woodard, Kevin Campbell, Kim Boyd and an unidenti-

fied woman. Later they were joined by Lester Snyder and a girl named Andrea, who was a friend of Wendy Herron's. After several hours of drinking in the basement of Croft's home, Croft and Henderson drove Snyder home. After returning, Henderson and Boyd were in a room located at the top of the basement stairs. Herron peered under the door to the room and saw the feet of Henderson and Boyd. Herron waited on the stairs until the door opened and Henderson and Boyd came out. Croft came down the stairs five minutes later. Herron and Andrea were then driven home by Henderson and Croft at about 3:45 a.m. Along the way, Croft and Henderson told her that they were returning to Croft's home.

Sixteen-year-old Anthony Woodard testified that he was at Croft's home on the evening of July 12. He, his brother Alonzo Woodard, his cousin Kevin Campbell, Kim Boyd and a girl named Angie got together with Croft, Henderson, Herron and a girl named Andrea, at Croft's home. After awhile the only people that were left were the Woodard brothers, Kevin Campbell, Croft, Henderson and Boyd. Henderson had led Boyd to a television room and later demanded that Woodard and Croft come into the room. There Henderson demanded that Boyd remove her pants. When she asked "Why?" Henderson hit her in the jaw, knocking her to the floor. She tried to fight back, but Henderson hit her again in the jaw. Henderson had vaginal intercourse with Boyd on the floor for 5 to 10 minutes, and then Croft put his penis in Boyd's mouth. Woodard tried to stop Henderson and Croft but refrained from doing so after he saw Croft had a knife. Croft told Woodard to sit down, and Woodard did so. Croft then ordered Boyd to perform an act of oral copulation upon him, which she did. Alonzo Woodard and Campbell tried to enter the room but could not because a chair was blocking the door. After having intercourse with Boyd, Henderson opened the door and, with a knife, forced Alonzo and Campbell to enter the room. Henderson and Croft then forced Alonzo Woodard and Kevin Campbell to have sex with Boyd. Croft held a knife to Alonzo, pulled Alonzo's pants down and pushed him towards Boyd. Henderson had a knife in his back pocket.

Woodard also testified that Campbell stood up and said, "This ain't right," and everybody got dressed. Henderson took Boyd to the bathroom and, when they emerged, Boyd had cleanser on her face. Henderson then told the others that they would have to kill Boyd. Croft blindfolded her and led her out the side door of the house. Henderson then drove his car to the front of the house, where Anthony and Alonzo Woodard and Campbell were waiting in a separate car. Henderson gave someone a "jump start" and then drove

around to the back of the house, at Croft's request. When Henderson returned, Campbell asked him where Boyd was, and Croft responded by patting the trunk of the car, stating that he would take her home. Henderson drove to Boyd's home but continued past. Woodard followed them for several blocks but lost them in traffic. Woodard admitted that he did not tell the police that Croft had a knife. He also did not tell the grand jury about the knife threats made to his brother Alonzo and cousin Campbell. He said that both Alonzo Woodard and Kevin Campbell were bigger than Croft and Henderson.

Detective Lawrence Tuider of the Chicago police department was assigned to investigate Boyd's death. He learned that other detectives had spoken with Alonzo Woodard and that the names of Croft and Henderson had come up. On July 17 Tuider and other detectives arrested Henderson at his apartment; Croft was arrested in the parking lot of the same apartment complex. After Croft was told why he was under arrest, he said that Henderson, not he, had killed Boyd.

When Tuider interviewed Croft later, Croft told him that Henderson became drunk and forced the other men, except Anthony Woodard, to have sex with Boyd. He himself did not have sex with her. It was Henderson's idea to kill Boyd. Henderson said Boyd should be killed because she would go to the police. She was then blindfolded with a brown rag that belonged to Croft. She was taken to the back of the house where she was placed in the trunk of the car by Henderson. (The car was owned by Henderson's mother.) Croft acted as a lookout when Boyd was taken to the car. Henderson and Croft drove off with Boyd in the trunk. Campbell and the Woodard brothers followed in a separate car, but eventually they lost Croft and Henderson in traffic. Croft told Henderson during the ride that they should feed Boyd, calm her down, and let her go home, but Henderson insisted that he had to kill her. At the alley on Carpenter Street they removed Boyd from the trunk, walked her 15 feet down the alley and laid her down. Croft was a passenger in the car, and Henderson drove over Boyd five times. Henderson got out of the car and stabbed Boyd repeatedly with a knife and then returned to the car. Croft and Henderson drove to Croft's house, where they washed up and went to bed.

Croft was also interviewed by Assistant State's Attorney Murray and said essentially the same thing with a few more details. Croft told Murray that when he, Henderson and Boyd were initially in the T.V. room, Henderson asked Boyd to engage in sexual intercourse, and she refused. Henderson hit her with a rolled up piece of wallpaper in the head. At Henderson's orders, Boyd removed her pants, and Hender-

son had vaginal intercourse with her from a frontal and rear position. After Henderson was finished, Alonzo Woodard entered the room and also had vaginal sex with Boyd. Croft also said Boyd was crying and begging them to stop. They discussed what they were going to do with Boyd. Henderson said that after what they had done to her they would have to kill her or she would go to the police. Alonzo Woodard agreed, but Croft did not agree. Henderson blindfolded Boyd and put her in the trunk of the car. Croft told Henderson to let Boyd go or to give her some food. Henderson disagreed; he said, "You know, she has to die." They drove to an alley and, while Croft remained in the car, Henderson took Boyd from the trunk, and laid her on the ground. Henderson returned to the car and drove over Boyd four or five times. While Croft stayed in the car, Henderson got out and stabbed Boyd with a knife until she stopped moving. Henderson then wiped the blood off of his hands on a building, and they returned to Croft's house, where they washed up.

Assistant State's Attorney Murray testified that after his interview with Croft, Croft was taken in front of Henderson and he repeated the statement he had just given to Murray. Croft refused, however, to make either a written or court-reported statement.

Murray spoke with Campbell and Alonzo Woodard at the Area 3 police station on July 18, 1986. They were both released. However, after Murray spoke with Croft and Henderson, the Chicago police were directed to bring Campbell and Alonzo Woodard back. Both Woodard and Campbell gave statements to Murray.

Campbell told Murray that he was at Croft's house on the evening of July 12. Around midnight Croft and Henderson returned after dropping off their girlfriends. They then brought Boyd into the den and closed the door. There was a hole in the door, so he and Alonzo looked in. He saw Henderson hit the victim on the head with a roll of wallpaper and ordered her to "suck his dick." While Boyd performed an act of oral copulation upon Croft, Henderson engaged in vaginal sex with Boyd from a rear position and frontal position. Campbell and Alonzo opened the door, but Croft said, "Be cool." Croft closed the door while placing a pillow over the hole. Campbell heard Henderson tell Croft to go get some lotion so he could "fuck this bitch," and Croft obeyed. Campbell and Alonzo made several more attempts to get inside. Finally, he and Alonzo pushed the door open and saw Boyd sitting on the floor wearing only her blouse. Boyd asked Campbell to help her, whereupon Henderson hit her on the head with a roll of wallpaper, and Croft kicked her in the head. Croft told Campbell and Anthony and Alonzo Woodard to "drop their pants" because Boyd

was going to "suck everyone's dick." Boyd pulled down Campbell's zipper and began to perform oral copulation on him and then on Alonzo. Anthony Woodard stood in the doorway but did not sexually assault Boyd.

Eventually, Campbell and the Woodard brothers left the room, and Henderson, Croft and Boyd emerged five minutes later. There was Comet cleanser on Boyd's blouse. Croft told Henderson they had to kill Boyd, and Henderson agreed. Campbell disagreed and told Croft and Henderson that Boyd's brothers were mean. Croft entered the room and put a brown rag over Boyd's eyes. Croft informed Boyd that if she told anyone it would be all over for her. Croft led everyone to the rear room and picked up a knife from the kitchen on the way out.

Once outdoors, Croft refused to allow Alonzo to drive Boyd home. Croft, Henderson, Boyd and Campbell walked to the garage, and then Campbell joined Alonzo and Anthony Woodard in the front. Henderson and Croft drove to the front where they told Campbell that Boyd was in the trunk. Campbell attempted to follow Henderson and Croft, but he lost them in traffic.

Alonzo Woodard gave Murray an account similar to that provided by Campbell. Woodard, however, said that when he and Campbell opened the door, Croft told the others, "Why don't you all get some[?]" When Alonzo refused, Croft ordered Boyd to do something to Campbell. When Campbell refused, Croft said he "had something on him." Campbell pulled his pants down and put his penis in Boyd's mouth. After that, Woodard sat on a pillow and pulled his pants down. Croft punched Boyd in the ribs, and then she performed oral copulation on Alonzo Woodard.

Croft was the only defendant to testify. He testified that during the party at his house he did not engage in sexual intercourse with Boyd but was in the room at the time the others did. Later, he was driving with Henderson and Boyd in Henderson's car at about 4 a.m. They stopped at 60th and Aberdeen to visit Croft's girlfriend, Jackie. Croft knocked on her door but received no answer. When he returned, Henderson had driven off with Boyd. Croft then walked down the block and called Jackie from a pay phone. He eventually arrived at Jackie's house at about 5 a.m. He denied giving statements to the police or to Assistant State's Attorney Murray.

Jackie Rucker testified that she saw Croft on July 13, 1986, before noon. He was not covered with blood.

The first contention of Woodard and Campbell is that they were not proved guilty beyond a reasonable doubt; they contend that they

established, as a matter of law, that they were compelled to participate in the acts against Boyd. We disagree. It would serve no purpose to repeat the statements of Woodard and Campbell. Suffice it to say that their statements, which were corroborated in significant detail by the testimony of Anthony Woodard, established that they acted in concert with Croft and Henderson and had Boyd perform an act oral copulation on them.

In order to establish the affirmative defense of compulsion, it must be shown that the defendant's acts were performed "under the compulsion of threat or menace of the imminent infliction of death or great bodily harm" and that the defendant reasonably believed that death or great bodily harm would be inflicted upon him if he did not perform the acts. (Ill. Rev. Stat. 1987, ch. 38, par. 7—11(a).) There is nothing in the statements of Woodard or Campbell that would justify a conclusion that they acted under a threat or menace of the imminent infliction of death or great bodily harm.

The defendant Woodard's brother, Anthony, testified that Henderson and Croft forced his brother and Campbell at knife point to have oral sex with Boyd. His testimony is at odds with the statements of his brother and Campbell. Moreover, he never told the police that Croft had a knife, and he never told the grand jury about any knife threats made by Croft or Henderson to his brother and Campbell. In any event, the credibility of Anthony Woodard was for the trial judge to determine. (*People v. Lester* (1981), 102 Ill. App. 3d 761, 430 N.E.2d 358.) Whether compulsion has been established is a question of fact. The trial judge concluded, in our judgment properly so, that the defense had not been established. The case cited by the defendants, *People v. Adcock* (1975), 29 Ill. App. 3d 917, 331 N.E.2d 573, is not in point. The issue in *Adcock* was whether a jury instruction concerning compulsion should have been given.

Woodard and Campbell next contend that the trial judge abused his discretion by conducting their bench trial with the bench trial of Croft and the jury trial of Henderson. The recent supreme court case of *People v. Schmitt* (1989), 131 Ill. 2d 128, 545 N.E.2d 665, is dispositive of their argument. The supreme court held that, when severed cases are heard simultaneously, it is presumed that the court will consider only competent evidence against each of the parties; that is, it is presumed that the trier of fact will separate the evidence admitted against each codefendant. This case began with that clear understanding. *Schmitt* also held that it would be better if the trial judge recited his findings and reasonings in each case. The judge did that in this case. Significantly, he found Woodard and Campbell

not guilty of murder. (*Cf. People v. Rybka* (1959), 16 Ill. 2d 394, 158 N.E.2d 17.) *Schmitt* also held that where a party agrees to the trial judge conducting simultaneous severed cases, the defendant is not in the position to later claim he was prejudiced. As noted, the defendants agreed to have their trial conducted along with the trial of Croft and Henderson. For these reasons, we judge that no reversible error occurred when Woodard and Campbell were tried with Croft and Henderson.

■ The last contention of Woodard and Campbell is that the trial judge abused his discretion in sentencing them to a 28-year prison term. The defendants were convicted of a Class X felony (Ill. Rev. Stat. 1987, ch. 38, par. 12—14(d)) and were subject to a sentence of not less than 6 years and not more than 30 years (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(3)). The defendants concede that they were subject to an extended-term sentence under section 5—5—3.2(b)(5) of the Unified Code of Corrections (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.2(b)(5)). Thus, the defendants were eligible for a maximum term of 60 years; the State recommended a term of 60 years. Considering the particularly heinous nature of the sexual crimes committed against Boyd by the four defendants, and the fact that Woodard and Campbell knew that Croft and Henderson said that Boyd should be killed, but they did nothing to save her, we do not believe that the judge abused his discretion in sentencing Woodard and Campbell to a term of 28 years' imprisonment. (See *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.) For these reasons, the judgments of conviction and the sentences of Campbell and Woodard are affirmed.

Croft's sole contention is that the judge erred in considering the statements of Woodard, Campbell and Henderson at Croft's sentencing hearing. The record affirmatively shows that the judge did rely on their statements in his findings of fact before sentencing Croft. We will first consider Henderson's statement.

When Henderson was first arrested he was questioned by Assistant State's Attorney Murray, who had already spoken with Croft. When Murray asked Henderson about Boyd's death, Henderson acknowledged being at Croft's residence on the night of the murder but denied involvement in her death. Murray told Henderson that his denial was "inconsistent with what the other witnesses had told [him]." Henderson then asked him "what Croft had said." Murray asked Henderson whether he wanted to hear for himself, and Henderson said that he did. Croft was brought into the room and repeated to Henderson the statements he had previously given Murray concerning Boyd's death. Henderson then stated that he would tell "what really

happened." Henderson then gave an oral statement and agreed to give a court-reported statement.

Henderson said that he was at Croft's residence at 6736 South Bell in Chicago with a group including Alonzo and Anthony Woodard, Kevin Campbell, Andrea Wilkes, a girl named Wendy and Kim Boyd. At 11 p.m. he drove Wendy and Andrea Wilkes home. When he returned he had a brief conversation with Anthony Woodard and Boyd. He became angry at Boyd because he believed she was cheating on Anthony by having sex with Anthony's brother Alonzo. Henderson called Anthony and Boyd in a separate room where he asked Boyd why she was doing this. Boyd responded with a "smart remark," so he struck her in the head with a roll of wallpaper. Boyd then removed her pants, and Henderson called Alonzo Woodard, Croft and Campbell into the room. Campbell said, "Give me some pussy." Henderson told Boyd to "suck [his] dick," which she did. Campbell then had vaginal intercourse with Boyd. Croft in the meantime was forcing Boyd to engage in an act of oral copulation with him. After Croft and Campbell ejaculated, Croft tried to have vaginal intercourse but could not maintain an erection. While Henderson stuck his penis in the victim's vagina from a rear position, Alonzo forced Boyd to engage in an act of oral copulation.

At one point Henderson left the room to answer the doorbell when a man named Leroy and Leroy's girlfriend arrived. Henderson told Leroy that the other men were in the room "getting laid." Henderson then called Croft and Campbell out of the room and told them:

> "We raped her, we got to do something with her. We can't let her go because if we let her go, she said she wouldn't do anything; but if I was a girl, I would."

Croft agreed and suggested they take Boyd "down to the railroad tracks." Henderson said, "Fuck that, you take her to the railroad tracks." At that point Croft went back to the room where Boyd was and returned with Campbell, who asked Henderson, "What you going to do?" Croft said, "We going to take her on the railroad tracks." Henderson disagreed and stated, "There's got to be a better way. *** We ought to kill her, man, because I'm not going to spend no time in jail for a bitch." Henderson then left the residence and "jumpstarted" Leroy's car, which was parked in front of the house. When he returned, Croft, Campbell and Anthony Woodard were waiting at the rear door. At the request of Croft and Campbell, Henderson drove his car to the rear of the house. At that time Boyd was blindfolded with a pair of pants. Croft said they should put her in the front, but

Henderson opened the trunk of the car, and Campbell and Croft put the victim in the trunk.

Croft suggested they drive to his girlfriend's house. They then drove to an alley off Carpenter Street. When they opened the trunk of the car, Boyd pleaded with him to "explain." Henderson removed a knife from Croft's pants and stabbed Boyd in the throat twice. Croft said, "Fuck, the bitch ain't dead." He and Croft then removed Boyd from the trunk and placed her on the ground. Henderson stabbed her in the chest. Though she continued to plead for her life, Croft took the knife and stabbed her several times. While she lay on the ground, Henderson again stabbed her and Croft noticed that she still was not dead. Croft then started stabbing Boyd in the head. Henderson then "got nervous" and told Croft that he "knew if she lived, we're going to get caught. So I might as well finish her off." Henderson told Murray, "I started finishing her off. I stabbed her in the behind, once in the leg and once in the stomach and that was it." Boyd, however, continued to move. Croft then suggested that they run her over with the car. Henderson told Croft that he "would take responsibility for the car" and then drove the car within two inches of Boyd. Henderson backed up to the end of the alley and drove over Boyd's midsection. He ran over her again, and this time Boyd's foot hit the side fender. Boyd continued to move her arms and legs, so Henderson ran over her with the car for a third time.

■ The usual rules of evidence do not apply at a sentencing hearing. The test governing admissibility is whether the evidence is relevant and reliable. (*People v. Johnson* (1989), 128 Ill. 2d 253, 538 N.E.2d 1118.) Hearsay testimony which meets the relevance and reliability test is admissible at a sentencing hearing. *People v. Foster* (1987), 119 Ill. 2d 69, 518 N.E.2d 82.

■ The principal case dealing with the admissibility of a codefendant's statement is *Lee v. Illinois* (1986), 476 U.S. 530, 90 L. Ed. 2d 514, 106 S. Ct. 2056, in which the Supreme Court stated that a codefendant's statement is presumptively unreliable because the statement might well be the product of the codefendant's desire to shift or spread blame, exonerate himself or divert attention to another. The *Lee* court also held that, in considering whether the presumption of unreliability had been rebutted, the court could consider the circumstances surrounding the codefendant's statement and whether the codefendant's statement "interlocks" with the defendant's statement in all material aspects. 476 U.S. at 545, 90 L. Ed. 2d at 428-29, 106 S. Ct. at 2064.

In *People v. Turner* (1989), 128 Ill. 2d 540, 539 N.E.2d 1196, and *People v. Rogers* (1988), 123 Ill. 2d 487, 528 N.E.2d 667, the Illinois Supreme Court, following *Lee*, held that the rule governing the admissibility of codefendant's statements is applicable at sentencing hearings. In *Turner*, there were five separate accounts of the defendant's participation, including the defendant's version and that of his codefendants. The court held that matters to be considered were whether the codefendants had an opportunity to contrive their defense, and whether their statements did not interlock with the defendant's statement or other evidence on significant aspects of the offense *involving the degree of the defendant's planning and participation*. The supreme court remanded for a new hearing, holding that the statement of the codefendant did not interlock with the defendant's statement on significant aspects of the offense.

■ In our judgment, the evidence did not overcome the presumption of unreliability and Henderson's confession should not have been considered in the sentencing of Croft. After being arrested, Henderson refused to give a statement other than to say that he was present at Croft's house. He denied any wrongdoing. The assistant State's Attorney told Henderson that his denial was inconsistent with what the other witnesses had said. The assistant State's Attorney did not identify the witnesses, but Henderson asked only what Croft had said. When he was confronted with Croft's statement, Henderson said he would tell "what really happened." The most reasonable inference to be drawn from that sequence of events is that Henderson wanted to get even with Croft. Although the statements of Croft and Henderson did "interlock" on many aspects, they differed in two crucial aspects. Croft denied any sexual contact with Boyd, and he denied any active participation in the acts that took her life. Indeed, according to his statement he tried to talk Henderson out of harming her. He said that he told Henderson to give her some food and let her go home.

The State argues that, because Henderson was not trying to shift the blame to Croft and to exonerate himself, discrepancies between his statement and that of Croft are not significant. This argument was recently rejected in *People v. Mahaffey* (1989), 128 Ill. 2d 388, 539 N.E.2d 1172, decided after this case was heard in the circuit court. We conclude, therefore, that Henderson's statements should not have been admitted at Croft's sentencing hearing.

We turn now to the admissibility of the statements of Woodard and Campbell. The pertinent parts of Campbell's statement are as follows.

Croft engaged in an act of oral copulation with Boyd. When Boyd asked Campbell to help her, Henderson struck her with a roll of wallpaper and Croft kicked her in the head. Croft placed his buttocks on Boyd's face and told her to "lick [his] ass." Croft told Henderson they would have to kill her, and Henderson agreed. Croft told Boyd, "It is all over for you," and Croft picked up a knife from the kitchen drawer as they were leaving.

Woodard's statement was substantially the same as Campbell's. In addition he said that Croft told them, "Why don't you all get some[?]" When Campbell refused, Croft said he "had something on him." Croft punched Boyd in the ribs. Boyd told Woodard that Henderson and Croft said they were going to kill her, and she asked for Woodard's help. Woodard asked Croft and Henderson to let her go, and they refused. As Croft led Boyd out the door, Croft picked up a knife.

■■ In our judgment the statements of Campbell and Woodard were damaging to Croft and were at variance with his statement. We note also that Woodard and Campbell told Murray that the first suggestion to kill Boyd came from Croft, which was contrary to the statement of Henderson. We judge that the statements of Campbell and Woodard also should not have been admitted at Croft's sentencing hearing.

For these reasons, we vacate the sentence of Croft and remand the cause for a new sentencing hearing. We mean to imply no lack of confidence in the impartiality of the trial judge, but, under the circumstances, the resentencing should take place before a different judge. See *People v. Dean* (1987), 156 Ill. App. 3d 344, 509 N.E.2d 618.

Appeal No. 1—87—2222, Judgment affirmed.
Appeal No. 1—87—2223, Judgment affirmed.
Appeal No. 1—87—2083, Judgment of sentence vacated and cause remanded with instructions.

RAKOWSKI, P.J., and McNAMARA, J. concur.