# Illinois Official Reports

## Appellate Court

---

**People v. Croft, 2013 IL App (1st) 121473**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CURTIS CROFT, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-12-1473 |
| Filed | November 26, 2013 |
| Rehearing denied | January 30, 2014 |
| Modified upon<br>denial of rehearing | February 4, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The appellate court upheld the second-stage dismissal of defendant's postconviction petition alleging that his sentence to natural life without parole for participating in a gang rape and murder of a 16-year-old girl was imposed without consideration of the United States Supreme Court's decision in *Miller*, which held that a sentence to mandatory life without parole imposed on a person under 18 at the time of the offense is cruel and unusual punishment, since defendant failed to establish that the late filing of his petition was not due to his culpable negligence, and even assuming the petition was timely, there was no merit in defendant's claim that his sentence was unconstitutional, especially when defendant was subject to a discretionary life sentence, defendant's age and "the crime and the criminal" were considered, and a term of natural life was imposed based on the findings that the murder was brutal and heinous. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 86-CR-9932; the Hon. Lawrence Flood, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Manuel S. Serritos, all of State Appellate Defender's Office, of Chicago, for appellant. |
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Assistant State's Attorney, of counsel), for the People. |
| Panel | JUSTICE PIERCE delivered the judgment of the court, with opinion.[*] Presiding Justice Harris and Justice Simon concurred in the judgment and opinion. |

**OPINION**

¶ 1      Defendant Curtis Croft appeals from the second-stage dismissal of his petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2012)). He contends that the circuit court erred in dismissing his petition where his sentence of natural life without parole was imposed without consideration of the factors cited in *Miller v. Alabama*, 567 U.S. ___, 132 S. Ct. 2455 (2012). For the reasons stated, we affirm.

¶ 2                          I. BACKGROUND

¶ 3      At the age of 17, defendant participated in the gang rape and murder of 16-year-old Kim Boyd. Following a 1987 bench trial, he was found guilty of murder, aggravated kidnapping, and aggravated criminal sexual assault, then sentenced to natural life imprisonment for the murder, 45 years for aggravated criminal sexual assault, and 10 years for aggravated kidnapping, to run concurrently. This court affirmed defendant's convictions on direct appeal; however, we vacated his sentence and remanded the cause for a new sentencing hearing after finding that the trial court improperly considered the statements of his codefendants at sentencing. *People v. Croft*, 211 Ill. App. 3d 496 (1991). On remand, a different judge presided over defendant's sentencing hearing and imposed the same sentence as before, stating:

> "The defendant talks about mistake in judgment. This is not a case of passive presence, negative acquiescence, mistaken judgment, none [*sic*] participation. It is not

---

[*]Justice Quinn originally authored the opinion in this case. Due to his untimely death, Justice Pierce became the author of this opinion modified on denial of rehearing. Presiding Justice Harris has reviewed all of the briefs.

a situation of not using good judgment to associate with certain people, in effect then being in the wrong place at the wrong time.

This is a case of the defendant's participation in the series of events which properly resulted in guilty findings as to murder and aggravated kidnapping and aggravated criminal sexual assault.

The evidence in this case seems to me to be about a person who was really cold hearted, almost inhuman in his participation in his brutal, heinous, evil doing. One of the most brutal crimes I have ever seen in all the years I've spent in this building.

About 40 stab wounds, gang rape, driving over this young girl in a car, after having her in the trunk. One can almost not imagine any worst [*sic*] facts. Nightmarish is almost too weak a word. It staggers the imagination.

And this defendant cannot simply say, gee, I'm terribly sorry this all happened.

There is [*sic*] certain crimes that there are no second chances. There are [*sic*] no one free bite. There are no forgivenesses, saying I'm sorry, expressing regret. Even if I were to consider the defendant's words about mistake in judgment to be equivalent, are [*sic*] not good enough.

There was a participation in one of the brutal crimes that I've heard about. And for that a great penalty must be paid.

The victim cannot be brought back and the family's tragedy, which the defendant alluded to in his remarks cannot be allayed. I [*sic*] simply saying, well, I'm sorry it happened. I'm sorry, I was there or legally participated.

So, considering the presentence report, considering the arguments and testimony and evidence at this sentencing hearing, considering the factors set forth in the statute, considering the crime and the criminal, the crime being about as heinous a murder as one can imagine, and by a person who because of the nature of the crime, one can only determine to have evil intentions and to be absolutely heartless, merciless and heartless during the killing and torture of this young girl.

All things considered, the sentence of the Court will be a reiteration of Judge Neville's sentence, that is natural life without parole on the murder, 45 years for aggravated criminal sexual assault, and 10 years for aggravated kidnapping, concurrent."

On appeal, this court reduced defendant's sentence for aggravated criminal sexual assault to 30 years' imprisonment, but otherwise affirmed the sentence imposed. *People v. Croft*, No. 1-92-2163 (1994) (unpublished order under Supreme Court Rule 23). The supreme court denied defendant's petition for leave to appeal on December 6, 1994. *People v. Croft*, 158 Ill. 2d 556 (1994) (table).

¶ 4 On March 25, 1999, defendant filed a *pro se* petition for postconviction relief alleging ineffective assistance of trial and appellate counsel. Defendant acknowledged that the petition was untimely, but claimed that he was not culpably negligent for the late filing. First, defendant noted that he had sought relief in federal court after his petition for leave to appeal was denied and argued that his "time spent litigating in Federal Court shows that he was not

setting [*sic*] by idlely [*sic*] during this time period but was actually attempting to obtain some relief in his cause." Second, he claimed that in April 1998, prison staff confiscated his documents from a jailhouse paralegal named "Thomas," who was working on his petition, and the documents were not returned to him until December 1998. A grievance report attached to the petition showed that two volumes of defendant's trial transcripts were, indeed, confiscated from another inmate's cell and ordered returned to him.

¶ 5　　On April 15, 1999, the circuit court summarily dismissed defendant's postconviction petition on the grounds that it was untimely and that defendant had failed to demonstrate his lack of culpable negligence. This court affirmed that dismissal. *People v. Croft*, No. 1-99-1606 (Mar. 21, 2001) (unpublished order under Supreme Court Rule 23). However, the supreme court subsequently entered a supervisory order directing us to reconsider the matter in light of *People v. Boclair*, 202 Ill. 2d 89 (2002). *People v. Croft*, 205 Ill. 2d 600 (2003) (supervisory order). Having reconsidered, we found that the trial court erred in summarily dismissing defendant's petition on the grounds of untimeliness and, therefore, reversed and remanded the cause for further proceedings. *People v. Croft*, No. 1-99-1606 (July 20, 2004) (unpublished order under Supreme Court Rule 23).

¶ 6　　On remand, the public defender was initially appointed to represent defendant on his petition. Defendant then hired a private attorney, and the public defender was granted leave to withdraw. Eventually, defendant fired his private attorney as well and filed a *pro se* amended postconviction petition alleging that his life sentence was unconstitutional " 'As Applied' " under *Roper v. Simmons*, 543 U.S. 551 (2005), and *People v. Miller*, 202 Ill. 2d 328 (2002). The State filed a motion to dismiss defendant's petition, arguing that it was untimely and that defendant had failed to explain why the delay in filing was not due to his culpable negligence. After the State filed its motion, defendant again requested assistance of counsel, and the public defender was reappointed to represent him.

¶ 7　　On November 10, 2011, a hearing was held on the State's motion to dismiss. At the hearing, the State reiterated that defendant's petition was four years late and that he had not established why he was not culpably negligent for the late filing. In response, counsel for defendant stated:

> "I contacted [defendant] and asked him if he could provide me with any information that could explain why his petition was four years late, and the only thing that he responded is the fact that he thought his petition wasn't late because he was raising a constitutional issue, and that was the only thing, Judge."

On March 22, 2012, the court granted the State's motion to dismiss, finding that "basically, the defendant's filing was untimely, no basis under the law to exclude [*sic*] that untimeliness." Defendant now appeals from that dismissal.

¶ 8　　　　　　　　　　　　　II. ANALYSIS

¶ 9　　The Act provides a mechanism by which a criminal defendant may assert that his conviction was the result of a substantial denial of his constitutional rights. *People v. Delton*, 227 Ill. 2d 247, 253 (2008). At the second stage of proceedings, defendant has the burden of

making a substantial showing of a constitutional violation. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). A petition may be dismissed at this stage only where the allegations, liberally construed in light of the trial record, fail to make such a showing. *People v. Hall*, 217 Ill. 2d 324, 334 (2005). All well-pleaded facts that are not positively rebutted by the record are to be taken as true. *Pendleton*, 223 Ill. 2d at 473. We review *de novo* the dismissal of a petition without an evidentiary hearing. *Hall*, 217 Ill. 2d at 334.

¶ 10        In this appeal, defendant contends that his natural life sentence for a murder that occurred when he was under 18 years of age is unconstitutional under *Miller v. Alabama*. In *Miller*, 567 U.S. at ___, 132 S. Ct. at 2460, the United States Supreme Court held that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.' " While not imposing a categorical bar on life sentences for juveniles, the Court required "that a sentencer follow a certain process–considering an offender's youth and attendant characteristics–before imposing a particular penalty." *Miller*, 567 U.S. at ___, 132 S. Ct. at 2471. Defendant claims that such a process was not followed in the case at bar and that "he was sentenced without regard to his age and its hallmark features."

¶ 11        The State responds that *Miller* does not apply retroactively to cases on collateral review, as it announced a new rule of constitutional law. The State further responds that *Miller* does not render defendant's natural life sentence unconstitutional because it only prohibits mandatory life sentences for juveniles, not a discretionary life sentence such as the one defendant received in this case.

¶ 12        Before considering these arguments, we must first address an issue that the parties have almost completely failed to discuss: the untimeliness of defendant's petition. At the time defendant's petition was filed, the Act provided:

> "No proceedings under this Article shall be commenced more than 6 months after the denial of a petition for leave to appeal or the date for filing such a petition if none is filed or more than 45 days after the defendant files his or her brief in the appeal of the sentence before the Illinois Supreme Court *** or 3 years from the date of conviction, whichever is sooner, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence." 725 ILCS 5/122-1(c) (West 1998).

See *People v. Wallace*, 406 Ill. App. 3d 172, 174 (2010) (noting that "[t]he applicable time limits for a postconviction petition are the ones that were in effect when the defendant filed the petition"). Throughout the proceedings, defendant conceded that his postconviction petition was untimely and that is not at issue here. He argued, however, that the late filing was not due to his culpable negligence.

¶ 13        Our supreme court has held that culpable negligence "contemplates something greater than ordinary negligence and is akin to recklessness." *Boclair*, 202 Ill. 2d at 108. In this case, defendant offered three reasons for why he was not culpably negligent for the late filing of his petition: (1) he was initially busy seeking relief in federal court; (2) prison staff confiscated his documents in April 1998; and (3) he thought his petition was not late because he was raising a constitutional issue. None of these excuses are persuasive. First, there is no reason defendant could not file a timely postconviction petition regardless of his proceedings

in federal court. Second, defendant's petition was already late by the time his documents were confiscated by prison staff in April 1998. And, finally, the fact that defendant thought his petition was not late because he was raising a constitutional issue is simply ignorance of the law, which our supreme court has noted will not excuse a delay in filing a lawsuit. *People v. Lander*, 215 Ill. 2d 577, 588 (2005). Under the circumstances, defendant clearly failed to establish that the late filing of his petition was not due to his culpable negligence. *Boclair*, 202 Ill. 2d at 108. However, in a petition for rehearing, defendant correctly argues that the State forfeits the issue of a defendant's failure to comply with the Post-Conviction Hearing Act's time limitations where the State fails to raise the issue, as the State failed to do in this appeal. *Boclair*, 202 Ill. 2d at 101-02.

¶ 14    Addressing the appeal on its merits, we find defendant's claim that his life sentence is unconstitutional under *Miller* to be without merit. In *Miller*, the Supreme Court prohibited "mandatory" life sentences for juveniles. *Miller*, 567 U.S. at ___, 132 S. Ct. at 2460. Here, section 5-8-1 of the Unified Code of Corrections, which applied at the time of defendant's sentencing, provided for a discretionary life sentence, stating:

> "(a) A sentence of imprisonment for a felony shall be a determinate sentence set by the court under this Section, according to the following limitations:
>
> (1) for murder, (a) a term shall be not less than 20 years and not more than 40 years, or (b) if the court finds that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty *** the court *may* sentence the defendant to a term of natural life imprisonment[.]" (Emphasis added.) Ill. Rev. Stat. 1985, ch. 38, ¶ 1005-8-1(a)(1).

At defendant's sentencing hearing, moreover, the trial court expressly considered defendant's presentence investigation report, which included his age, as well as "the crime and the criminal." *People v. Partin*, 156 Ill. App. 3d 365, 373 (1987) (trial court is presumed to have considered any evidence of mitigation before it). Ultimately, however, the court found the murder of which defendant was convicted to be "brutal" and "as heinous a murder as one can imagine," and, on that basis, rejected a term of years in favor of a sentence of natural life imprisonment. This court rejected defendant's claim on direct appeal that his sentence was excessive. *Croft*, No. 1-92-2163. Contrary to defendant's claim, there is simply no basis for applying *Miller* in this case. Defendant not only received a discretionary life sentence, but his youth was also a mitigating factor considered by the court in its sentencing determination. *Miller*, 567 U.S. at ___, ___, 132 S. Ct. at 2460, 2471.

¶ 15    We reaffirm our holding in *People v. Williams*, that *Miller* is a "watershed rule[ ] of criminal procedure" and should be applied retroactively. (Internal quotation marks omitted.) *People v. Williams*, 2012 IL App (1st) 111145, ¶¶ 53-54 (quoting *People v. Sanders*, 238 Ill. 2d 391, 401 (2010)). In the case at bar, however, *Miller* does not provide a basis for collateral relief where a juvenile's natural life sentence was imposed as a result of the sentencing court exercising its discretion, as opposed to mandatorily sentencing defendant to natural life. *Miller*, 567 U.S. at ___, 132 S. Ct. at 2460. We specifically leave the issue of whether the Supreme Court's holding in *Miller* trumps the timeliness of a postconviction petition to be decided in a case where *Miller* applies.

¶ 16        For the reasons stated, we affirm the second-stage dismissal of defendant's postconviction petition by the circuit court of Cook County.

¶ 17        Affirmed.