NOTICE

Decision filed 07/02/19. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2019 IL App (5th) 150192

NO. 5-15-0192

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Washington County. |
| | ) | |
| v. | ) | No. 00-CF-67 |
| | ) | |
| LEONARD B. PARKER, | ) | Honorable |
| | ) | Daniel J. Emge, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court, with opinion.
Presiding Justice Overstreet and Justice Chapman concurred in the judgment and opinion.

**OPINION**

¶ 1     The defendant, Leonard Parker, appeals the denial by the circuit court of Washington County of his motion for leave to file a successive petition for postconviction relief. For the following reasons, we reverse and remand.

¶ 2     On September 12, 2000, the State charged the defendant by amended information with four counts of first degree murder (720 ILCS 5/9-1(a)(1), (a)(3) (West 2000)) stemming from the stabbing of the victim, by a codefendant, during the course of a robbery and/or residential burglary. The defendant was charged under a theory of accountability. He was 16 years old at the time of his arrest.

¶ 3     On October 26, 2000, the defendant entered a negotiated plea of guilty to count II of the amended information, which charged him with first degree murder during the course of a robbery. In exchange for his guilty plea, the State agreed to ask for a sentence of imprisonment

not to exceed 50 years and to dismiss the remaining three counts of first degree murder.[1] At the guilty plea hearing, the trial court admonished the defendant that the possible sentencing range was 20 to 60 years' imprisonment or, under certain circumstances, life imprisonment. The court accepted the defendant's guilty plea and found that it was knowingly and voluntarily made.

¶ 4    On December 14, 2000, the trial court held a sentencing hearing. During the hearing, the court advised the defendant that, absent the plea deal, he could have been sentenced to life imprisonment or 20 to 60 years' imprisonment. In announcing the sentence, the court, noting that the legislature had increased the penalties for first degree murder, explained that the increase in penalties was a fairly clear indication that, by allowing individuals of the defendant's age to be charged with first degree murder, everyone should be held responsible and accountable. The court further explained that the penalties should be increased with a view toward deterring the commission of the offense. Regarding the aggravating factors, the court considered the defendant's previous criminal history and the deterrent effect of a lengthy sentence. As for the factors in mitigation, the court considered the defendant's age, the fact that his conduct was induced or facilitated by his sister, who was older, that his conduct was the result of circumstances unlikely to recur, and the fact that he had a child. The court also considered the fact that he was using marijuana on the day of the incident. The court then sentenced him to 35 years' imprisonment and ordered him to pay a $10,000 fine and court costs.

¶ 5    Thereafter, on January 10, 2001, the defendant filed a motion for leave to withdraw his guilty plea, contending that he entered his guilty plea without sufficient understanding and contemplation of the serious nature of the consequences of entering a plea, that he felt pressured to enter his guilty plea by the advice that he received from his parents, and that his counsel

---

[1]The defendant contends that the reference to the three dismissed charges is a distraction where only one death occurred.

briefly discussed the plea offer with him in the hallway of the courthouse while he was shackled and under guard, thus allowing him no privacy or sufficient time to discuss the offer. Counsel also filed a certificate of compliance with Illinois Supreme Court Rule 604(d) (eff. Nov. 1, 2000). In addition, the defendant filed a motion to reconsider his sentence, arguing that his sentence was excessive. At the February 23, 2001, hearing on the motions, the defendant withdrew his motion to withdraw his guilty plea after being admonished by the trial court that withdrawing his guilty plea would result in him being tried on all four counts of first degree murder and that, if found guilty, he could receive anywhere from 20 to 80 years' imprisonment or life imprisonment.

¶ 6    Counsel then proceeded on the motion to reconsider the defendant's sentence. After hearing the defendant's testimony and the arguments of counsel, the trial court denied the motion to reconsider sentence. The defendant appealed his sentence, and this court dismissed the appeal because the defendant had abandoned his motion to withdraw his guilty plea and, thus, had failed to comply with the requirements of Illinois Supreme Court Rule 604(d) (eff. Nov. 1, 2000), which instructs that a defendant who entered into a negotiated guilty plea could not challenge his sentence without filing a motion to withdraw the guilty plea. *People v. Parker*, No. 5-01-0129 (2001) (unpublished order under Illinois Supreme Court Rule 23).

¶ 7    Almost nine years later, on October 28, 2010, the defendant filed a *pro se* petition for postconviction relief, raising four claims of error in the proceedings leading to his conviction. The petition addressed the delay in filing, seeking to justify it as not based on his own culpable negligence. In his *pro se* petition, the defendant contended that he received ineffective assistance of counsel based on newly discovered evidence that the police had ignored his parents' request to not question him until his father could be present, that his counsel did not inquire as to whether he was questioned outside of his parents' presence, that he was coerced into entering a guilty

- 3 -

plea by his counsel and parents where his plea was based on a misrepresentation of the possible sentencing range (counsel had allegedly told him that he could receive a 20-year sentence for each count of first degree murder and that the maximum was a death sentence), and that he was coerced by his counsel to withdraw his motion to withdraw his guilty plea.

¶ 8       On December 13, 2010, the trial court found that some of the defendant's claims were not frivolous and patently without merit and advanced the petition to the second stage of postconviction proceedings. See 725 ILCS 5/122-2.1(b) (West 2010). On March 31, 2011, the State filed a motion to dismiss the petition for postconviction relief for the reason that it was filed beyond the time allowed by section 122-1(c) of the Post-Conviction Hearing Act (Act), which sets time limits by which the petitions must be filed "unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence." *Id.* § 122-1(c). On July 14, 2011, the trial court dismissed the defendant's postconviction petition, as it was untimely. The defendant appealed the dismissal of his postconviction petition, and this court affirmed that dismissal. *People v. Parker*, 2013 IL App (5th) 110298-U.

¶ 9       On April 6, 2015, the defendant filed a *pro se* motion for leave to file a successive petition for postconviction relief. In the attached petition, he asserted, among other things, that his 35-year sentence, without consideration of his youth and its attendant characteristics, amounted to a *de facto* life sentence in violation of the eighth amendment of the United States Constitution (U.S. Const., amend. VIII) as set forth in the United States Supreme Court's decision in *Miller v. Alabama*, 567 U.S. 460 (2012). On April 24, 2015, the trial court entered an order, denying the defendant leave to file a successive postconviction petition. With regard to the *Miller* claim, the court noted that *Miller* stood for the proposition that a mandatory life sentence for a juvenile, where a trial court had no discretion to consider mitigating factors, violated the eighth amendment. The court found that *Miller* was inapplicable because the defendant did not

- 4 -

receive a mandatory life sentence. The court further concluded that the defendant's claim that his 35-year sentence amounted to a *de facto* life sentence was frivolous because Illinois courts had upheld life sentences for juveniles as constitutional where the trial court had discretion to consider mitigating factors. See *People v. Croft*, 2013 IL App (1st) 121473, ¶ 14. In addition, the court noted that the defendant's age was considered as a mitigating factor at his sentencing. The defendant appeals the denial of his motion for leave to file a successive postconviction petition.

¶ 10    Initially, we have ordered taken with the case the defendant's motion to cite additional authority, requesting that we grant him leave to cite *People v. Buffer*, 2019 IL 122327, an Illinois Supreme Court case that was filed after the parties had already submitted their briefs. As this case is dispositive to an issue the defendant raised on appeal, we grant his motion to cite this additional authority.

¶ 11    In June 2012, after the defendant had filed his initial postconviction petition, the United States Supreme Court decided *Miller*, which held that imposing mandatory life sentences without parole for juvenile offenders, without considering the offender's youth and its attendant characteristics, violated the eighth amendment. *Miller*, 567 U.S. 460. Under *Miller*, a minor could still be sentenced to natural-life imprisonment without parole as long as the sentence was at the trial court's discretion rather than mandatory. *People v. Davis*, 2014 IL 115595, ¶ 43.

¶ 12    The Court later clarified *Miller*'s holding in *Montgomery v. Louisiana*, noting that *Miller* "drew a line between children whose crimes reflect transient immaturity and those rare children whose crimes reflect irreparable corruption." *Montgomery v. Louisiana*, 577 U.S. ___, ___, 136 S. Ct. 718, 734 (2016). *Miller* held that sentencing a child to life without parole is excessive for all but "the rare juvenile offender whose crime reflects irreparable corruption." (Internal quotation marks omitted.) *Id.* at ___, 136 S. Ct. at 734. Therefore, *Miller* required a sentencing

court to consider a juvenile offender's youth and its attendant characteristics before determining that life without parole is a proportionate sentence. *Id.* at ___, 136 S. Ct. at 734.

¶ 13 Thereafter, the Illinois Supreme Court decided *People v. Holman*, which determined whether the holdings in *Miller* and *Montgomery* were limited to only mandatory life sentences. *People v. Holman*, 2017 IL 120655, ¶ 40. There, our supreme court concluded that life sentences for juvenile defendants, whether mandatory or discretionary, were disproportionate and violated the eighth amendment unless the trial court considered the offender's youth and its attendant circumstances. *Id.* Thus, *Holman* extended *Miller* and *Montgomery* to discretionary sentences of life without parole for juvenile offenders. *Id.*

¶ 14 Subsequently, in *People v. Reyes*, our supreme court further extended *Miller*'s holding by concluding that sentencing a juvenile offender to a mandatory term of years that was the functional equivalent of life without the possibility of parole (*de facto* life sentence) constituted cruel and unusual punishment in violation of the eighth amendment. *People v. Reyes*, 2016 IL 119271, ¶ 9.

¶ 15 In April 2019, after the submission of briefs and oral argument in this appeal, our supreme court decided *Buffer*, 2019 IL 122327. There, the defendant, who had received a 50-year prison sentence for a crime that he committed when he was 16 years old, filed a postconviction petition asserting that his sentence violated the eighth amendment because it amounted to a *de facto* life sentence. *Id.* ¶¶ 1, 7. Our supreme court first noted that to prevail on a claim based on *Miller* and its progeny, a juvenile offender must show that he was subject to a life sentence, mandatory or discretionary, natural or *de facto*, and that the sentencing court failed to consider his youth and its attendant characteristics in imposing the sentence. *Id.* ¶ 27. The court then determined at what point a prison sentence for a term of years imposed on a juvenile defendant was the functional equivalent of life without parole. *Id.* ¶ 29. Deferring to the

- 6 -

legislature, the supreme court "[drew] a line at 40 years" and concluded that a prison sentence of 40 years or less imposed on a juvenile offender does not constitute a *de facto* life sentence in violation of the eighth amendment because it provides some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. *Id.* ¶¶ 40-41. The court then concluded that its holding applied retroactively and was cognizable in defendant's postconviction proceeding. *Id.* ¶ 46. Applying the established rule, the court concluded that defendant's 50-year sentence was a *de facto* life sentence, as it was greater than 40 years, and that the circuit court had failed to consider defendant's youth and its attendant characteristics in imposing his sentence. *Id.* ¶ 42. Thus, the court remanded for resentencing. *Id.* ¶ 47.

¶ 16    In the present case, the defendant concedes that *Buffer* is adverse authority for his argument that his 35-year prison sentence constituted a *de facto* life sentence. However, he contends that *Buffer* supports his related arguments that he should be allowed to challenge his guilty plea through a successive postconviction petition because he would not have pled guilty if he had understood the implications of the eighth amendment, that he should be entitled to a new sentencing hearing where the trial court failed to consider his youth and its attendant characteristics when imposing the sentence, and that his resulting 35-year sentence violated the proportionate penalties clause of the Illinois Constitution where it was grossly disproportionate to his moral culpability and did not comport with the objective of restoring him to useful citizenship. He asserted that he met the cause and prejudice test to file a successive postconviction petition because *Reyes* and *Buffer* had not been decided when he filed his initial postconviction petition and the application of *Buffer* changed the applicable sentencing range and eliminated his justifications for entering a guilty plea—*i.e.*, to avoid a natural-life sentence and for the State's recommendation to cap the sentence at 50 years—as neither sentence was constitutionally available absent evidence of incorrigibility.

¶ 17     The Act provides a mechanism by which those under criminal sentence can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both. 725 ILCS 5/122-1(a)(1) (West 2014). The Act contemplates the filing of only one postconviction petition. *Id.* § 122-1(f). However, a defendant may be granted leave to file a successive postconviction petition if he demonstrates cause for failing to bring the claim in his initial postconviction petition and that prejudice results from that failure. *Id.* A defendant shows cause by identifying an objective factor that impeded his ability to raise a specific claim during his initial postconviction proceedings. *Id.* A defendant establishes prejudice by demonstrating that the claim not raised during his initial postconviction proceedings so infected the trial that the resulting conviction or sentence violated due process. *Id.* Leave of court to file a successive postconviction petition should be denied where it is clear, from a review of the successive petition with supporting documentation, that the alleged claims fail as a matter of law or where the successive petition with supporting documentation is insufficient to justify further proceedings. *People v. Smith*, 2014 IL 115946, ¶ 35. We review *de novo* the trial court's order denying leave to file the successive postconviction petition. *People v. Sanders*, 2016 IL App (1st) 121732-B, ¶ 14.

¶ 18     In the instant case, the defendant has demonstrated cause because *Reyes* and *Buffer* had not been decided when he filed his initial postconviction petition and, thus, was not available to the defendant. See *Davis*, 2014 IL 115595, ¶ 42 (holding that *Miller*'s new substantive rule constituted "cause" because it was not available earlier to counsel). In addition, although the defendant's sentence was below the line drawn in *Buffer* and is not a *de facto* life sentence, we still find that the defendant has demonstrated prejudice. To show prejudice, a defendant must show a reasonable probability that he would have achieved a better result if the trial court had correctly applied the constitutional limitations of juvenile sentences. See *Sanders*, 2016 IL App

(1st) 121732-B, ¶ 20. *Buffer*, which applies retroactively, held that a prison sentence greater than 40 years amounted to a *de facto* life sentence. The defendant contends that he would not have pled guilty to felony murder in exchange for a sentencing cap of 50 years if the guidelines set forth in *Buffer* were established at the time that he entered his guilty plea. Specifically, he contends that he pled guilty after being repeatedly admonished that he could receive a natural-life sentence, which, given the facts of the case and the issuance of *Buffer*, is no longer a reasonable threat. He further argues that the State's offered sentencing cap of 50 years provided little to no incentive for him to plead guilty, as a 50-year sentence would constitute a *de facto* life sentence under *Buffer*. After reviewing the record, we find the defendant's arguments persuasive, as his guilty plea was influenced by the State's sentencing recommendation and the repeated admonishments that he could receive a life sentence. Thus, the retroactive application of *Buffer* constitutes cause and prejudice for purposes of being granted leave to file a successive postconviction petition. We, therefore, reverse and remand for additional postconviction proceedings in light of *Buffer*.

¶ 19    For the foregoing reasons, the judgment of the circuit court of Washington County is reversed and remanded.


¶ 20    Reversed and remanded.

2019 IL App (5th) 150192

NO. 5-15-0192

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Washington County. |
| | ) | |
| v. | ) | No. 00-CF-67 |
| | ) | |
| LEONARD B. PARKER, | ) | Honorable |
| | ) | Daniel J. Emge, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

**Opinion Filed:**        July 2, 2019
_____

**Justices:**        Honorable Thomas M. Welch, J.

                Honorable David K. Overstreet, P.J., and
                Honorable Melissa A. Chapman, J.,
                Concur

_____

**Attorneys**        James E. Chadd, State Appellate Defender, Ellen J. Curry,
**for**                Deputy Defender, Elizabeth M. Crotty, Assistant Appellate Defender,
**Appellant**        Office of the State Appellate Defender, Fifth Judicial District, 909 Water
                Tower Circle, Mt. Vernon, IL 62864

_____

**Attorneys**        Hon. Daniel M. Bronke, State's Attorney, Washington County
**for**                Courthouse, Nashville, IL 62263; Patrick Delfino, Director, David J.
**Appellee**        Robinson, Deputy Director, Luke McNeill, Staff Attorney, Office of the
                State's Attorneys Appellate Prosecutor, 725 South Second Street,
                Springfield, IL 62704

_____