NOTICE

Decision filed 02/19/21 The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 180029-U

NO. 5-18-0029

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Effingham County. |
| | ) | |
| v. | ) | No. 90-CF-18 |
| | ) | |
| STEVEN CRUMP, | ) | Honorable |
| | ) | Allan F. Lolie, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE WHARTON delivered the judgment of the court.
Justices Welch and Cates concurred in the judgment.

**ORDER**

¶ 1     *Held*: Defendant did not demonstrate prejudice stemming from his failure to raise a claim that his natural life sentence was unconstitutional as applied to him where he was an active participant in a murder when he was 23 years old. The trial court did not err in denying him leave to file a successive postconviction petition.

¶ 2     The defendant, Steven Crump, was 23 years old when he committed the murder at issue in this appeal. In 1990, he was sentenced to natural life in prison pursuant to a negotiated plea agreement involving multiple charges. The defendant subsequently filed both a postconviction petition and a petition for relief from judgment. In 2019, the defendant filed a motion for leave to file a successive postconviction petition. In the proposed petition, he argued that his natural life sentence violates the eighth amendment to the United States Constitution (U.S. Const., amend. VIII) and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I,

1

§ 11). This argument relied on developments in neuroscience showing that the brain continues to develop into a person's mid-20s and on recent cases that have relied on these developments to find that juveniles and young adult defendants are less morally culpable and more likely to be rehabilitated than other defendants. The defendant appeals the trial court's order denying his request to file a successive postconviction petition, arguing that he satisfied both parts of the cause-and-prejudice test. See 725 ILCS 5/122-1(f) (West 2018); *People v. Pitsonbarger*, 205 Ill. 2d 444, 459 (2002). We affirm.

¶ 3                                  I. BACKGROUND

¶ 4     This appeal comes to us after a long and complicated procedural history. The plea agreement at issue involved multiple felony charges stemming from two separate incidents that occurred in April 1989. In case number 90-CF-17, the defendant was charged with armed robbery. In case number 90-CF-18, he was charged with first degree murder, aggravated kidnapping, armed robbery, and concealment of a homicidal death. In October 1990, the defendant pled guilty to the armed robbery charge in 90-CF-17 and the charges of first degree murder and aggravated kidnapping in 90-CF-18. In exchange, the State dropped the remaining charges in 90-CF-18 and declined to pursue the death penalty. Pursuant to the agreement, the defendant was sentenced to concurrent terms of natural life in prison on the charges of first degree murder and armed robbery and 20 years on the aggravating kidnapping charge. The defendant's eligibility for a natural life sentence for murder was based on a finding that the murder was accompanied by exceptionally heinous behavior indicative of wanton cruelty and the fact that it occurred during the commission of a felony (Ill. Rev. Stat. 1987, ch. 38, ¶ 1005-8-1 (now at 730 ILCS 5/5-8-1(a)(1)(b) (West 2018))). His eligibility for a natural life sentence for armed robbery was premised on the habitual offender statute (Ill. Rev. Stat. 1987, ch. 38,

¶ 33B-1 (now at 730 ILCS 5/5-4.5-95(a) (West 2018))). The trial court accepted the defendant's plea and sentenced him in accordance with the plea agreement.

¶ 5    The defendant filed his first postconviction petition in 2001, challenging his natural life sentences based on *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The trial court dismissed the petition, finding it to be frivolous and patently without merit, and the defendant appealed that ruling.

¶ 6    On appeal, the defendant argued only that his natural life sentence for armed robbery was not authorized under the habitual offender statute. This court agreed. We explained that the habitual offender statute applies to defendants with two previous convictions for first degree murder, criminal sexual assault, or any Class X felonies, but only if (1) the defendant commits the second offense after he is convicted for the first offense and (2) he commits the third offense after he is convicted for the second offense. *People v. Crump*, No. 5-01-0430, order at 3-4 (July 2, 2002) (unpublished order under Illinois Supreme Court Rule 23). We found that the second of these requirements was not satisfied due to the timing of the defendant's convictions. *Id.* at 4. The defendant was convicted of his first armed robbery in 1983. *Id.* at 2. In April 1989, he committed the offenses involved in this case as well as another, unrelated armed robbery. *Id.* at 3. He pled guilty to the unrelated armed robbery in August 1989 (*id.*), and, as discussed, he pled guilty to the murder charge in 90-CF-18 in October 1990. In our decision, we explained that the third offense for purposes of the habitual offender statute—the armed robbery in 90-CF-17—was committed *before* the defendant was convicted on either the unrelated 1989 armed robbery charge or the murder charge in 90-CF-18, either of which could have constituted a second offense for purposes of the habitual offender statute. *Id.* at 4. As such, we concluded that the statutory requirement that the third offense be committed after a conviction for the second

offense was not satisfied and that the sentence was therefore not authorized by statute. *Id*. We modified the defendant's armed robbery sentence to a term of 60 years. *Id*. at 5.

¶ 7 In 2013, the defendant filed a petition for relief from judgment (735 ILCS 5/2-1401 (West 2012)). He asserted that his original natural life sentence for armed robbery was an essential part of the negotiated plea agreement. He contended that, as such, the reduction of that sentence rendered the entire plea agreement null and void. The trial court dismissed the petition. We affirmed that ruling on appeal, finding that the petition was untimely and there was no merit to the defendant's contentions. *People v. Crump*, 2017 IL App (5th) 140208-U.

¶ 8 In 2019, the defendant filed the motion for leave to file a successive postconviction petition at issue in this appeal. In the proposed petition, the defendant pointed to a series of United States Supreme Court cases holding that the eighth amendment places limits on the sentences that can be imposed on defendants who were juveniles at the time they committed their offenses. See *Miller v. Alabama*, 567 U.S. 460 (2012) (holding that mandatory sentences of life without the possibility of parole may not be imposed on juvenile defendants absent consideration of the mitigating characteristics of youth); *Graham v. Florida*, 560 U.S. 48 (2010) (holding that the eighth amendment categorically bars sentencing juvenile defendants to natural life in prison for offenses other than homicide); *Roper v. Simmons*, 543 U.S. 551 (2005) (holding that the eighth amendment requires a categorical bar on death sentences for juvenile defendants). The rationale underlying all three cases is the notion that, generally, juvenile defendants are both less culpable and more likely to be rehabilitated than adult defendants. See *Miller*, 567 U.S. at 471-73 (discussing *Roper* and *Graham*)). The defendant also pointed out that the Illinois Supreme Court has recognized that because recent developments in neuroscience show that the human brain does not fully develop until the mid-20s, the principles relied on by the United States Supreme

4

Court in *Miller*, *Graham*, and *Roper* might also apply to young adult defendants. See *People v. Thompson*, 2015 IL 118151, ¶ 44 (noting that the defendant, who was 19 years old when he committed the offense at issue, would not be precluded from raising an as-applied constitutional challenge to his sentence in a postconviction petition). The defendant further alleged that he endured a troubled youth. He argued that his sentence of natural life in prison, imposed for a crime committed when he was 23 years old, shocked the moral conscience of the community and ran afoul of the eighth amendment.

¶ 9    In the defendant's motion for leave to file the proposed petition, he argued that he satisfied the cause element of the cause-and-prejudice test because the advances in neuroscience and the caselaw he relied upon were not available to him when he was sentenced in 1990. He argued that he satisfied the prejudice part of the test because the trial court's failure to consider his youth as a mitigating factor before sentencing him to life in prison so infected the proceedings that it violated due process.

¶ 10    The trial court found that the defendant failed to demonstrate either cause or prejudice for his failure to bring his claim earlier. Accordingly, the court denied the defendant's request for leave to file the successive petition. This appeal followed.

¶ 11                                    II. ANALYSIS

¶ 12    The defendant argues that the court erred in denying his request for leave to file a successive petition because he satisfied both elements of the cause-and-prejudice test with respect to his claim that his natural life sentence was unconstitutional as applied to him under the Illinois proportionate penalties clause (Ill. Const. 1970, art. I, § 11). We disagree.

¶ 13    The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2018)) contemplates that a defendant will file only one postconviction petition. *People v. Davis*, 2014 IL 115595, ¶ 14

5

(citing *Pitsonbarger*, 205 Ill. 2d at 456); see also 725 ILCS 5/122-1(f) (West 2018). A defendant may not file a successive petition without first obtaining leave of the court to do so. *People v. Green*, 2020 IL App (5th) 170462, ¶ 27. To obtain leave, a defendant must either assert a claim of actual innocence or satisfy the cause-and-prejudice test. *Davis*, 2014 IL 115595, ¶ 14. To establish "cause" for his failure to bring his claims in an earlier petition, a defendant must allege that an "objective factor external to the defense" prevented him from doing so. *Id*. To establish "prejudice," a defendant must demonstrate that the claim asserted so infected his trial or sentencing proceedings that his conviction or sentence violated due process. *Green*, 2020 IL App (5th) 170462, ¶ 27 (citing *People v. Wrice*, 2012 IL 111860, ¶ 48). Both elements of the test must be satisfied. *Id*. On appeal, we review *de novo* a trial court's decision to grant or deny leave to file a successive petition. *People v. Ruiz*, 2020 IL App (1st) 163145, ¶ 26.

¶ 14 The State concedes that the defendant satisfied the "cause" element of the cause-and-prejudice test. We agree. Because his argument relies on cases that had not been decided when he brought his previous petition in 2001, he could not have raised these claims at that time. See *Davis*, 2014 IL 115595, ¶ 42. We therefore turn our attention to the defendant's argument that the court erred in finding that he did not satisfy the "prejudice" element of the test.

¶ 15 The defendant argues that he has satisfied the "prejudice" element by setting forth sufficient allegations to support his claim that his sentence was unconstitutional as applied to him under the Illinois proportionate penalties clause. See *Ruiz*, 2020 IL App (1st) 163145, ¶ 59 (noting that when considering a motion for leave to file a successive petition, all allegations must be taken as true). He acknowledges that by entering into a negotiated plea agreement, a defendant ordinarily forfeits any nonjurisdictional errors, including constitutional sentencing errors, and waives the constitutional rights associated with trial and sentencing. See *People v.*

6

*Townsell*, 209 Ill. 2d 543, 545-46 (2004). He correctly points out, however, that to be effective, the waiver of rights resulting from a guilty plea must be voluntary, knowing, and intelligent, and the waiver must be made "with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). The defendant argues that his plea was not knowing and intelligent because his decision to enter into the plea agreement was based on the prevailing understanding of applicable constitutional principles at the time, an understanding that is no longer accurate.

¶ 16    There is some support for the defendant's argument about the effect of his guilty plea. Although recent developments in this area of law apply retroactively (see *Davis*, 2014 IL 115595, ¶ 39), the defendant obviously did not have the benefit of recent caselaw to inform his decision to plead guilty in 1990. The defendant argues that under our current understanding of the constitutional limits on sentencing, neither the death sentence he avoided by pleading guilty nor the natural life sentence to which he agreed would be constitutional as applied to him. He argues that, because he could not know this when he decided to plead guilty, his plea was not knowing and intelligent. He also argues that avoidance of the death penalty would not provide an incentive to plead guilty with today's understanding of constitutional law. See *People v. Parker*, 2019 IL App (5th) 150192, ¶ 18 (finding that because a juvenile defendant's plea agreement was influenced by admonitions that he could receive a sentence that would be improper under *Miller* and its progeny, he demonstrated prejudice sufficient to meet the cause-and-prejudice test).

¶ 17    We need not decide whether the defendant's arguments concerning his sentence were forfeited by his decision to enter into a negotiated plea agreement. For the reasons that follow, we find that he is unable to establish that a sentence of natural life in prison violates the proportionate penalties clause as applied to him.

¶ 18    The question of constitutional limitations on the sentencing of juvenile and young adult defendants is a rapidly evolving area of law. See *People v. Daniels*, 2020 IL App (1st) 171738, ¶ 23. Our current understanding of these limitations evolved primarily from a trio of United States Supreme Court cases. In the first of these cases, *Roper v. Simmons*, the Court held that the eighth amendment categorically prohibits death sentences for juvenile defendants. *Roper*, 543 U.S. at 578-79. Next, the Court held in *Graham v. Florida* that the eighth amendment likewise categorically bars sentences of natural life in prison for juveniles who commit crimes other than homicide. *Graham*, 560 U.S. at 82.

¶ 19    In the third case, *Miller v. Alabama*, the Court held that a mandatory sentence of life without the possibility of parole violates the eighth amendment when imposed on a murder defendant for a murder committed as a juvenile. *Miller*, 567 U.S. at 470. The Court declined to consider whether the eighth amendment requires a categorical prohibition on sentences of life without parole for juvenile murder defendants. *Id*. at 479. However, the Court suggested that such sentences would be appropriate in rare cases, provided that the sentencing court takes into consideration "how [juveniles] are different [from adults], and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id*. at 479-80. In *People v. Holman*, the Illinois Supreme Court explicitly held that *Miller* applies to discretionary sentences of natural life in prison without the possibility of parole. *People v. Holman*, 2017 IL 120655, ¶ 38.

¶ 20    The rationale underlying the holdings in *Miller*, *Graham*, and *Roper* is that juveniles have unique characteristics that give them both "diminished culpability and greater prospects for reform" compared to adult defendants. *Miller*, 567 U.S. at 471 (citing *Graham*, 560 U.S. at 68). These characteristics include their lack of maturity, recklessness, impulsiveness, and vulnerability to negative influences from family or peers. *Id*. (citing *Roper*, 543 U.S. at 569). In

addition, because a juvenile defendant's "character is not as 'well-formed' as an adult's," his or her conduct is "less likely to be 'evidence of irretrievabl[e] deprav[ity].' " *Id.* (quoting *Roper*, 543 U.S. at 570). The Court recognized that these characteristics "do not disappear when an individual turns 18." *Roper*, 543 U.S. at 574. However, reasoning that the line must be drawn somewhere, the Court limited its holdings to defendants who were under the age of 18 when they committed their offenses. *Miller*, 567 U.S. at 465; *Graham*, 560 U.S. at 74-75; *Roper*, 543 U.S. at 574; see also *People v. Harris*, 2018 IL 121932, ¶ 56 (noting that the United States "Supreme Court has never extended its reasoning to young adults age 18 or over").

¶ 21    In discussing the salient characteristics of youth underlying its holdings in *Miller*, *Graham*, and *Roper*, the Supreme Court relied on developments in neuroscience and developmental psychology. *Miller*, 567 U.S. at 471-72; *Graham*, 560 U.S. at 68; *Roper*, 543 U.S. at 569. As Illinois courts have recognized, recent research in those fields has shown that the human brain continues to develop until an individual reaches his or her mid-20s, making young adults "more similar to adolescents than [to] fully mature adults in important ways." *People v. House*, 2019 IL App (1st) 110580-B, ¶ 55 (citing Vincent Schiraldi & Bruce Western, *Why 21-Year-Old Offenders Should be Tried in Family Court*, Wash. Post (Oct. 2, 2015)). As such, despite the bright line the United States Supreme Court has drawn for eighth amendment purposes at age 18, Illinois courts have held that young adult defendants can attempt to show that natural life sentences are unconstitutional as applied to them under the Illinois proportionate penalties clause. See, *e.g.*, *Harris*, 2018 IL 121932, ¶ 48; *Thompson*, 2015 IL 118151, ¶ 44; *People v. Franklin*, 2020 IL App (1st) 171628, ¶ 69; *People v. Johnson*, 2020 IL App (1st) 171362, ¶ 34; *Ruiz*, 2020 IL App (1st) 163145, ¶ 48; *House*, 2019 IL App (1st) 110580-B, ¶ 65.

¶ 22    The seminal case is the First District's decision in *People v. House*. There, the defendant was found guilty of two counts of murder. *House*, 2019 IL App (1st) 110580-B, ¶ 4. He was 19 years old at the time of the murders and had no prior history of violent crimes. *Id*. ¶ 33. The defendant was not the actual shooter (*id*. ¶ 46); rather, he was convicted on a theory of accountability because he acted as a lookout (*id*. ¶ 29). There was no evidence that he was involved in planning the murders. *Id*. ¶ 46. The defendant was sentenced to consecutive terms of natural life in prison, a sentence that was mandatory under the applicable statute because more than one person was killed. *Id*. ¶ 29 (citing 730 ILCS 5/5-8-1(a)(1)(c)(ii) (West 1998)). As the First District observed, because the sentence was mandatory, the sentencing court was unable to consider "these mitigating factors." *Id*. ¶ 33. After considering recent research into "the differences between young adults" and "fully mature" adults (*id*. ¶¶ 55-56), the First District held that a mandatory life sentence violated the Illinois proportionate penalties clause as applied to the defendant (*id*. ¶ 65). The court therefore vacated his sentence and remanded for a new sentencing hearing at which the trial court could consider relevant mitigating evidence, including the defendant's youth. *Id*.

¶ 23    The differences between this case and *House* are stark. Here, the defendant was an active participant in a brutal murder. Unlike the defendant in *House*, the defendant in this case had three convictions for armed robbery, two of which were committed within the two weeks after the defendant committed the murder and armed robbery involved in this case. Most significantly, the defendant in this case was just two months shy of his twenty-fourth birthday when he committed the murder. No Illinois court has accepted a youth-based challenge to the sentence of a defendant who was older than 20 years old at the time of the offense. See *Harris*, 2018 IL 121932, ¶¶ 45-48 (noting that a postconviction petition would be an appropriate avenue to raise this type of claim

where the defendant was 18 years old at the time of the offense); *Thompson*, 2015 IL 118151, ¶¶ 43-44 (noting that postconviction petition would be an appropriate avenue to raise such a claim where the defendant was 19 years old at the time of the offense); *Green*, 2020 IL App (5th) 170462, ¶ 37 (rejecting an as-applied sentencing challenge by a defendant who was 22 years old at the time of his offense); *Ruiz*, 2020 IL App (1st) 163145, ¶¶ 1-2 (reversing the denial of a successive postconviction petition raising this issue where the defendant was 18 years old at the time of the offense). The First District has explicitly limited such challenges to defendants who were 20 years old or younger when they committed their crimes. See *Franklin*, 2020 IL App (1st) 171628, ¶ 63; *People v. Humphrey*, 2020 IL App (1st) 172837, ¶¶ 33-34.

¶ 24 We recognize that we are not required to follow the decisions of other districts of the Illinois Appellate Court. *People v. York*, 2016 IL App (5th) 130579, ¶ 25. We need not decide in this case whether this court, too, will draw a bright line at the age of 20. It suffices to say that the defendant in this case was in his mid-20s when he committed the murder, and that aggravating factors such as the brutality of the murder and the defendant's history of violent offenses weigh heavily in favor of a natural life sentence even under the current state of the law. For these reasons, the defendant's petition fails to set forth a claim of an as-applied violation of the Illinois proportionate penalties clause.

¶ 25                                  III. CONCLUSION

¶ 26 For the reasons stated in this order, we affirm the court's order denying his motion for leave to file a successive postconviction petition.


¶ 27 Affirmed.

11