NOTICE
Decision filed 08/25/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 190053-U

NO. 5-19-0053

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Perry County. |
| | ) | |
| v. | ) | No. 02-CF-181 |
| | ) | |
| CARL A. FURRELL, | ) | Honorable |
| | ) | James W. Campanella, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court.
Presiding Justice Boie and Justice Cates concurred in the judgment.

**ORDER**

¶ 1    *Held*: We reverse the order denying the defendant leave to file a successive postconviction petition where he satisfied the cause-and-prejudice test and remand for further postconviction proceedings.

¶ 2    The defendant, Carl A. Furrell, appeals from the Perry County circuit court's denial of his motion for leave to file a successive postconviction petition. For the following reasons, we reverse and remand.

1

¶ 3                                    I. BACKGROUND

¶ 4                        A. Guilty Plea Proceedings and Direct Appeal

¶ 5      In 2002, the defendant was charged with four counts of first degree murder and one count of armed robbery. The State alleged that on or about September 27, 2002, the defendant stabbed James Adcock with a knife in the neck and chest, causing his death, and the defendant forcibly stole $90 from the victim. The defendant was later additionally charged with residential burglary and attempted residential burglary. He was 16 years old at the time of the events giving rise to his charges.

¶ 6      On October 4, 2002, the defendant filed a motion requesting a fitness examination. An evaluation was conducted by James S. Peterson, Ph.D., a licensed clinical psychologist. The defendant told Peterson that at the time of the offenses, he had been attending the tenth grade at a special school for behaviorally disordered students; he had received special education since kindergarten; and he had difficulty with spelling, math, health, and reading. He had also received outpatient counseling for anger management issues as recently as the previous year.

¶ 7      Based on his findings, Peterson determined that the defendant was fit to stand trial; the parties and the trial court initially concurred in that conclusion. However, the defense later filed a motion to reconsider based on observations of the defendant's conduct, statements, and demeanor. The court found the defendant unfit to stand trial and ordered him to be transferred to the Illinois Department of Human Services (DHS) for treatment.

¶ 8      In a progress report, John Costigan, M.D., informed the trial court that the defendant read at a sixth-grade level and had a full-scale IQ score of 78. In a subsequent report, Dr.

Costigan noted that the defendant had previously suffered two head injuries and had been diagnosed with depressive disorder, conduct disorder, and cannabis abuse. He was prescribed Wellbutrin to reduce anxiety. After reviewing what the defendant would necessarily need to understand in order to be fit to stand trial, Dr. Costigan concluded that the defendant had attained fitness. At a hearing on March 12, 2003, the court concluded that the defendant was fit to stand trial, with the caveat that he continue to take the Wellbutrin as prescribed.

¶ 9     On October 21, 2003, a guilty plea hearing was held. Dr. Peterson testified at the hearing that he had spoken with the defendant and believed that he was fit to plead guilty. The State recited the factual basis for the guilty plea. The defendant then entered into a negotiated plea of guilty to one count of first degree murder and a juvenile offense of residential burglary, in exchange for the dismissal of his other charges and the State's agreement to cap its sentencing recommendation to 60 years total, with the sentence for residential burglary to be served concurrently with the sentence for first degree murder.

¶ 10    On December 8, 2003, a sentencing hearing was held. In aggravation, the State presented evidence from the county coroner establishing that the victim was stabbed four times in support of the State's contention that the defendant intended to kill the victim. The State emphasized the evidence of premeditation and described the defendant as a cold-blooded killer.

¶ 11    The defense offered no evidence in mitigation but asked the trial court to take notice of the prior proceedings related to the defendant's "mental aptitude and social background." The court stated that it would take notice of the fact that the defendant

3

"would have been, of course, 16 years of age at the time that he would have been first incarcerated. He is of marginal maturity from that standpoint for his age, in my opinion. He does have some mental disadvantages that we tried to rectify by sending him to [the DHS facility], granting him the education that he needed to understand these proceedings."

¶ 12    The defense emphasized the defendant's admission of wrongdoing and remorse, argued that the premeditation was for a robbery, not a murder, and noted that the goal of sentencing under Illinois law was rehabilitation. Defense counsel briefly mentioned the defendant's youth in that context. Counsel asked for a sentence of 25 years' imprisonment. In a brief statement in allocution, the defendant said the murder "wasn't supposed to happen but it happened so I take responsibility and I am sorry."

¶ 13    The trial court sentenced the defendant to 50 years' imprisonment. In sentencing him, the court expressed appreciation for his confession and stated that the confession made its sentencing decision "a little bit easier." The court added, "What makes the sentencing tough again though in this case is the age of the defendant. How soon we forget what it was like to be 16, 17-years-old, which even if I were to go with the minimum here, the man would be 37-years-old before he got out of prison." However, the court was troubled by the fact that the defendant continued to stab the victim after fatally wounding him and that he admitted having plans to commit further crimes. The court believed that defense counsel had worked a miracle and the State had "exhibited compassion by allowing you to stay within the 60 year range," when it could have sought additional penalties that would have increased the sentencing range to up to 100 years. The court stated that it was "taking into account a myriad of things, not the least of which what the statute requires [*sic*] that I take
4

into account, your age, your taking responsibility for this, your confessing to it, your not having us go through a prolonged trial to prove perhaps the inevitable." The court found that the 50-year sentence was "necessary to protect the public."

¶ 14 On January 5, 2004, the defendant filed a *pro se* letter asking the trial court to reconsider the sentence. On February 27, 2004, after the defendant accused his plea counsel of going behind his back in reaching a plea agreement, the court appointed new counsel to represent the defendant on his postplea motions. On September 16, 2004, the defendant filed an amended motion to reconsider and/or vacate his sentence alleging that his plea counsel failed to investigate and provide the court with mitigating evidence, thereby depriving him of a fair sentencing hearing. The motion also alleged, *inter alia*, that the sentence was "excessive given the defendant's mental status, age, *** education, occupational or personal habits and potential for rehabilitation." The defense later filed several affidavits, mainly attesting to the defendant's good character, in support of the claim that plea counsel could have presented additional evidence in mitigation.

¶ 15 On February 28, 2005, a hearing was held on the defendant's amended motion to reconsider sentence. The court denied the motion for reconsideration on March 1, 2005.

¶ 16 Also on February 28, 2005, the defendant filed an amended motion to vacate judgment and withdraw guilty plea. The motion alleged that "the defendant did not knowingly, intelligently, or voluntarily waive his right to a jury trial, nor did the defendant fully understand or comprehend the admonitions of the court pursuant to Supreme Court Rule 402." The motion also alleged that the defendant's plea counsel was ineffective.

5

¶ 17 On February 14, 2006, the defendant filed a second amended motion to vacate judgment and withdraw guilty plea. A hearing was held on the motion on October 24, 2006. During the course of the hearing, the defense presented expert testimony from Daniel J. Cuneo, Ph.D., a clinical psychologist who interviewed the defendant and reviewed the prior records in this case. Dr. Cuneo testified that the defendant had a "borderline mentally retarded range of intelligence," with his IQ in the bottom 6% of the nation. He further testified that the defendant had attempted suicide once and had self-mutilated. His family had a history of depression, and the defendant had suffered at least two incidents of head trauma.

¶ 18 The defendant also reported a history of drug and alcohol abuse, including LSD use and an allegation that he used LSD on the day of the offense. He was diagnosed as having "dysthymic disorder," a mental illness characterized by periods of depression and a learning disorder. Dr. Cuneo concluded that the defendant was legally sane at the time of the offenses, but "he would have qualified for a guilty but mentally ill plea," and his mental illness would have "impaired his actions." Dr. Cuneo added:

> "his mental illness has been a major contributor to his actions. He has had a lengthy history of depression. *** He has had little stability. He has had an extremely dysfunctional childhood. He has never felt accepted, always felt to be an outcast. He has had limited intellectual abilities, frequent moods, and difficulties in school, all added to a sense of estrangement. The way he dealt with this stuff—alcohol and drugs. He self medicated. They then became problematic in themselves and when they became problematic in themselves they increased his potential for acting out and decreased his impulse control. The history of head trauma would have also decreased his impulse control."

¶ 19 On October 30, 2006, the trial court denied the defendant's motion to withdraw his guilty plea, concluding, *inter alia*, there was insufficient evidence to find that he had

6

received ineffective assistance of counsel. The defendant filed a direct appeal, arguing that the court abused its discretion in denying his amended motion to withdraw his guilty plea because his plea was rendered involuntary by the incompetence of his plea counsel. This court rejected that argument and affirmed his conviction and sentence. See *People v. Furrell*, No. 5-06-0594 (Mar. 18, 2008) (unpublished order under Illinois Supreme Court Rule 23). The Illinois Supreme Court denied the defendant's petition for leave to appeal. See *People v. Furrell*, 231 Ill. 2d 641 (2009).

¶ 20    B. The Defendant's First Collateral Attack on the Judgment of Conviction

¶ 21    On July 8, 2016, the defendant filed a *pro se* petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)). It was the defendant's first postconviction petition, and in it, he claimed that recent amendments to the statutes governing juvenile sentencing gave him the right to a new sentencing hearing. He also raised claims related to sentencing errors and ineffective assistance of counsel.

¶ 22    On July 20, 2016, the circuit court entered an order denying the petition at the first stage, concluding that the defendant's petition was untimely, patently frivolous, and without merit. The defendant appealed the dismissal, but later dismissed his appeal voluntarily.

¶ 23    C. The Defendant's Second Collateral Attack on the Judgment of Conviction

¶ 24    On December 17, 2018, the defendant filed a *pro se* motion for leave to file a successive postconviction petition. He asserted that he demonstrated cause for his failure to include the claim in his prior petition, because the authority supporting his position was decided after the dismissal of the first postconviction petition. In support of his argument,

7

he cited to *People v. Holman*, 2017 IL 120655; *People v. Reyes*, 2016 IL 119271; *People v. Coty*, 2018 IL App (1st) 162383; and *People v. Buffer*, 2017 IL App (1st) 142931. As to prejudice, the defendant argued he was prejudiced because the sentence imposed in 2003 did not take adequate account of his status as a juvenile, an intellectually disabled person, and a person with mental illness, as now required under the eighth amendment of the United States Constitution (U.S. Const., amend. VIII) and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11).

¶ 25   On January 22, 2019, the circuit court denied the motion for leave to file the successive postconviction petition, emphasizing that the defendant entered a negotiated plea of guilty for first degree murder. The court rejected the defendant's argument as to cause because *Miller v. Alabama*, 567 U.S. 460 (2012), and its progeny, continues to evolve the theories surrounding the sentencing of juveniles. The court noted that because the defendant entered a negotiated plea, the prejudice prong was not satisfied. The court also noted that it considered all relevant factors under the sentencing statute and took into account the defendant's age, education, mental health, seriousness of the offense, and prospects for rehabilitation. Because the State conceded to a sentencing cap of 60 years, the only discretion the sentencing court could employ was a sentence between 20 and 60 years. Therefore, the court determined that a sentence of 50 years was not mandatory, disproportionate, or cruel and unusual under the circumstances of this case, nor did it constitute a *de facto* life sentence. The defendant appeals.

8

¶ 26                              II. ANALYSIS

¶ 27    The Act provides a method for criminal defendants to assert that "in the proceedings which resulted in his or her conviction there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both." 725 ILCS 5/122-1(a)(1) (West 2016). "A proceeding under the Act is a collateral attack on the judgment of conviction." *People v. Wrice*, 2012 IL 111860, ¶ 47. Although our supreme court has made clear that the Act contemplates only one postconviction proceeding, the court has provided in its case law two bases upon which the bar against successive proceedings will be relaxed: (1) a showing of cause and prejudice or (2) a claim of actual innocence. *People v. Edwards*, 2012 IL 111711, ¶¶ 22-23. Here, the defendant alleges only cause and prejudice, which we discuss below.

¶ 28    When a defendant seeks to file a successive postconviction petition, he must first obtain leave of court. 725 ILCS 5/122-1(f) (West 2016). Leave of court may be granted only if defendant demonstrates "cause" for his failure to bring the claim in his initial postconviction proceeding and "prejudice" resulting therefrom. See *id.* (codifying the cause-and-prejudice test articulated in *People v. Pitsonbarger*, 205 Ill. 2d 444, 458-60 (2002)); *Wrice*, 2012 IL 111860, ¶ 48. A defendant shows cause by identifying an objective factor that impeded his ability to raise a specific claim in his initial postconviction petition. 725 ILCS 5/122-1(f) (West 2016); *Wrice*, 2012 IL 111860, ¶ 48. A defendant shows prejudice by demonstrating that the claim not raised in his initial postconviction petition so infected his trial that the resulting conviction or sentence violated due process. *Id.* It is defendant's burden to establish a *prima facie* showing of cause and prejudice in

9

order to be granted leave before further proceedings on his claims can follow (*People v. Bailey*, 2017 IL 121450, ¶ 24; *People v. Smith*, 2014 IL 115946, ¶ 30), and both elements must be satisfied for defendant to prevail (*People v. Guerrero*, 2012 IL 112020, ¶ 15). We review a trial court's order denying leave to file a successive postconviction petition *de novo*. *People v. Parker*, 2019 IL App (5th) 150192, ¶ 17.

¶ 29 Here, the defendant argues that the circuit court erred in denying him leave to file a successive postconviction petition because he established cause and prejudice. The State concedes as much on appeal. We find that the defendant has demonstrated cause because the cases his present claim is based on had not been decided when he filed his initial postconviction petition, and, thus, were not available to him at that time. See *People v. Davis*, 2014 IL 115595, ¶ 42; *Parker*, 2019 IL App (5th) 150192, ¶ 18 (both holding that *Miller*'s new substantive rule constituted "cause" because it was not available at the time of the initial postconviction petition).

¶ 30 To show prejudice, a defendant must establish "a reasonable probability that he would have achieved a better result if the trial court had correctly applied the constitutional limitations of juvenile sentences." *Parker*, 2019 IL App (5th) 150192, ¶ 18. *People v. Buffer*, which has been found to apply retroactively, held that a term of imprisonment greater than 40 years constitutes a *de facto* life sentence. *People v. Buffer*, 2019 IL 122327, ¶¶ 40-41. Sentencing a juvenile offender to a *de facto* life sentence constitutes cruel and unusual punishment in violation of the eighth amendment. *Reyes*, 2016 IL 119271, ¶ 9. The defendant asserts that he would not have agreed to plead guilty in exchange for a sentencing cap of 60 years' imprisonment if the guidelines set out in *Buffer* had been

10

established at the time of his guilty plea hearing. He specifically maintains that he pled guilty after being admonished that he could have received a natural-life sentence or a 100-year sentence, which, after *Buffer*, is no longer a reasonable threat. He further argues that the sentencing cap of 60 years offered by the State provided little to no incentive for him to plead guilty, as a 60-year sentence would constitute a *de facto* life sentence under *Buffer*. After reviewing the record, and this court's decision in *Parker*, 2019 IL App (5th) 150192, which the defendant relies on, we find that he has established prejudice, as his guilty plea was influenced by the State's sentencing recommendation and the admonishments that he could receive a 100-year or natural-life sentence. "Thus, the retroactive application of *Buffer* constitutes cause and prejudice for purposes of being granted leave to file a successive postconviction petition." *Parker*, 2019 IL App (5th) 150192, ¶ 18. Accordingly, we reverse and remand for additional postconviction proceedings.[1]

¶ 31                              III. CONCLUSION

¶ 32    For the foregoing reasons, the judgment of the circuit court of Perry County is reversed and remanded.

¶ 33    Reversed and remanded.

---

[1]We note that the State does dispute the second claim in the defendant's successive postconviction petition based on *Coty*, 2018 IL App (1st) 162383. However, because the defendant has established cause and prejudice with respect to his first claim, the parties agree that we do not need to address whether he established cause and prejudice with respect to his *Coty* claim.

11