# Illinois Official Reports

## Appellate Court

---

### *People v. Robinson*, 2021 IL App (1st) 181653

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Respondent-Appellee, v. LAURENCE M. ROBINSON, Petitioner-Appellant. |
| District & No. | First District, First Division<br>No. 1-18-1653 |
| Filed | June 1, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-CR-02542-01; the Hon. Ramon Ocasio III, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | James E. Chadd, Douglas R. Hoff, and Joseph Michael Benak, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Annette Collins, and Brian K. Hodes, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE WALKER delivered the judgment of the court, with opinion.<br>Justices Pierce and Coghlan concurred in the judgment and opinion. |

**OPINION**

¶ 1 Petitioner-appellant Laurence Robinson pleaded guilty to three counts of first degree murder and one count of attempted first degree murder. Robinson later filed a *pro se* postconviction petition, alleging, *inter alia*, that his trial counsel was arguably ineffective and his guilty plea was involuntary because the circuit court misapprehended the correct sentencing range. At the first-stage hearing, the circuit court found that the petition did not present a "just constitutional claim." Robinson now appeals, arguing that his petition states the gist of a constitutional claim and that this court should remand the petition for second-stage proceedings. For the following reasons, we reverse the circuit court's ruling and remand for second-stage proceedings.

¶ 2                                BACKGROUND

¶ 3 On the evening of February 12, 2007, 17-year-old Laurence Robinson entered the Bachhall's Hardware Store in Maywood, Illinois. Upon his entrance, the cashier, June Lowenthal, told Robinson that the store was closed. Robinson then removed a revolver from the pocket of his hoodie and demanded that June give him all the money. June responded that she did not have any money. Her son, Jeff Lowenthal, who managed the family store, hurried to the front of the store. As Robinson saw Jeff approaching, Robinson then shot Jeff in the left chest area and twice more in the back. Robinson then noticed another employee, Jay Weber, fired a shot at him, and fled the store. Jeff later died from his gunshot wounds.

¶ 4 On January 8, 2008, Robinson was arrested. Weber and a customer present at the time of the shooting later identified Robinson in photo arrays and in-person lineups. Expert testing of two fired bullets recovered from Jeff's body revealed that they were fired from a handgun later recovered from Robinson's grandfather's home, where Robinson lived.

¶ 5 On May 12, 2008, Robinson's appointed counsel was replaced by a private attorney. At the pretrial status hearing, on August 10, 2011, private counsel informed the circuit court that he "had a conversation with [Robinson] and I've shown him the recent Supreme Court case that came down. He indicated that there is going to be a change of plea in this case." The assistant state's attorney (ASA) stated that it would be "an agreed situation."

¶ 6 On September 1, 2011, the circuit court accepted Robinson's negotiated guilty plea to three counts of first degree murder and one count of attempted murder, whereby Robinson would receive a 35-year sentence for the murder counts, to be served at 100% and to run concurrently with a 30-year sentence for attempted murder.

¶ 7 The circuit court then advised Robinson that he was pleading guilty to three counts of first degree murder in that he (1) without lawful justification shot and killed Jeff Lowenthal with a firearm, (2) without legal justification shot and killed Jeff Lowenthal while armed with a firearm knowing that such act created a strong possibility of death or great bodily harm to Jeff Lowenthal, and (3) without legal justification shot and killed Jeff Lowenthal with a "firearm during the commission of a forcible felony, to wit armed robbery."

¶ 8 The circuit court also advised Robinson that he was pleading guilty to one count of attempted first degree murder in that, he without lawful justification and with intent to kill Jay Weber, shot at him, which "constituted a substantial step" toward the commission of first degree murder. Robinson was informed the sentencing range for the murder counts was 20 to

60 years, the range for attempted murder was 6 to 30 years, and the sentence will be followed by 3 years of mandatory supervised release. Robinson stated that he understood.

¶ 9 At no time did Robinson file a motion to withdraw his guilty plea, but on January 9, 2018, Robinson filed a *pro se* postconviction petition. The petition alleged that Robinson's trial counsel was ineffective for failing to object to the conviction and sentence of three separate 35-year terms of imprisonment for first degree murder for one offense and for failing to request a fitness hearing and subpoena medical records to corroborate Robinson's defense. Robinson contends that he did not receive a fair sentencing hearing because the circuit court did not consider his youth as required pursuant to *Miller v. Alabama*, 567 U.S. 460 (2012), when it accepted his guilty plea and because he "did not fully understand the nature of the charges" against him, "was unable to fully aid in his defense," and "was not in his right state of mind when he pled guilty."

¶ 10 Additionally, Robinson's petition alleged that he was denied due process, equal protection, and fair sentencing and was subjected to cruel and unusual punishment because the circuit court did not consider the factors in *Miller* before a "*de facto* life sentence." He alleged that because he pleaded guilty to "a *de facto* life sentence," he would "not have a meaningful opportunity to demonstrate maturity or rehabilitation as required to obtain release and reenter society." Robinson further alleged that the circuit court was unable to receive evidence in mitigation "to indicate if it would concur with the proposed disposition where the new constitutional Rule of Law was unavailable at the time that [Robinson] was being sentenced." Robinson requested that his "plea be withdrawn, and his conviction and sentence vacated" and that *Miller*'s requirements be taken into consideration upon resentencing.

¶ 11 Robinson also attached his own affidavit in which he averred that he was sent to a mental hospital and diagnosed with bipolar disorder in 2005 when he was 15 years old. He also attested that he took psychotropic medication on and off from 2005-2006 for his bipolar disorder but that he informed trial counsel that he was not on medication from 2007-2011.

¶ 12 On February 2, 2018, the circuit court dismissed the petition without a written order but stated that the petition did not present a "just constitutional claim." Robinson now appeals.

¶ 13                                                      ANALYSIS

¶ 14 Robinson initially argued on appeal that his *pro se* postconviction petition stated the gist of a constitutional violation, his trial counsel was arguably ineffective, his guilty plea should be vacated because the circuit court misapprehended the correct sentencing range, and the circuit court erred by summarily dismissing his petition. Furthermore, Robinson argues that this court should remand his petition for second-stage proceedings because the circuit court applied the incorrect legal standard for summary dismissal, did not make any findings of fact, and did not issue a written order.

¶ 15 The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)) sets out a three-stage proceeding in which a criminal defendant may assert that his conviction resulted from a substantial denial of his rights under the United States Constitution, the Illinois Constitution, or both. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). A circuit court may summarily dismiss a postconviction petition if it determines that the petition is "frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2018). A petition is frivolous or patently without merit only if it has "no arguable basis either in law or in fact." *Hodges*, 234 Ill. 2d at 16.

¶ 16    At the first stage, the court must liberally construe and accept as true all the allegations in the petition unless contradicted by the record. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). A defendant need only allege sufficient facts to state the "gist" of a constitutional claim for his petition to be forwarded to the second stage. *Hodges*, 234 Ill. 2d at 9. A petition lacks an arguable basis in fact if it is based upon fanciful factual allegations, such as one that is clearly baseless, fantastic, or delusional. *Id.* at 16-17. A petitioner needs to present only a limited amount of detail and is not required to include legal argument or citation to legal authority. *Edwards*, 197 Ill. 2d at 244-45. However, a *pro se* petitioner is not excused from providing factual detail on the alleged constitutional deprivation. *People v. Delton*, 227 Ill. 2d 247, 254 (2008). The summary dismissal of a postconviction petition is reviewed *de novo*. *People v. Petrenko*, 237 Ill. 2d 490, 496 (2010).

¶ 17    Robinson's petition alleges that he was denied a fair sentencing hearing because the circuit court did not consider his youth when it accepted his guilty plea. In his supplemental briefing, Robinson further alleges that he has stated the gist of a constitutional violation that, per *Miller* and *People v. Buffer*, 2019 IL 122327, he should be permitted to withdraw his guilty plea because it was secured by the threat of a now unconstitutional *de facto* life sentence.

¶ 18    In *Miller*, the United States Supreme Court held that mandatory sentences of life imprisonment without the possibility of parole violate the eighth amendment of the United States Constitution when imposed upon a juvenile offender. *Miller*, 567 U.S. at 470. The Court noted that its holding "mandates only that a sentencer follow a certain process—considering an offender's youth and attendant characteristics—before imposing a particular penalty." *Id.* at 483. Among those attendant circumstances were diminished culpability, greater prospects for reform, lack of maturity, an underdeveloped sense of responsibility, limited control over their environment, and an inability to extricate themselves from crime-producing settings. *Id.* at 471. The Supreme Court later held that *Miller* applies retroactively. See *Montgomery v. Louisiana*, 577 U.S. 190, 206 (2016).

¶ 19    In *People v. Reyes*, 2016 IL 119271, ¶ 9, the Illinois Supreme Court expanded the reasoning of *Miller* to include mandatory *de facto* life sentences, stating:

> "A mandatory term-of-years sentence that cannot be served in one lifetime has the same practical effect on a juvenile defendant's life as would an actual mandatory sentence of life without parole—in either situation, the juvenile will die in prison. *Miller* makes clear that a juvenile may not be sentenced to a mandatory, unsurvivable prison term without first considering in mitigation his youth, immaturity, and potential for rehabilitation."

¶ 20    Shortly after *Reyes*, the Illinois Supreme Court further expanded *Miller*'s reasoning to apply to discretionary life sentences. See *People v. Holman*, 2017 IL 120655, ¶ 40.

¶ 21    In *Buffer*, our supreme court found that, to prevail on a claim that a juvenile's life sentence violated the eighth amendment, a defendant must show both that (1) he was "subject to a life sentence, mandatory or discretionary, natural or *de facto*," and (2) "the sentencing court failed to consider youth and its attendant characteristics." *Buffer*, 2019 IL 122327, ¶ 27. The *Buffer* court defined a *de facto* life sentence as being greater than 40 years. *Id.* ¶ 42.

¶ 22    In admonishing Robinson on his guilty plea, the court stated that, should he elect to go to trial, Robinson could face a maximum of 60 years in prison if found guilty of first degree murder and 30 years in prison if found guilty of attempted first degree murder. On appeal, Robinson argues that the circuit court's judgment summarily dismissing his postconviction

should be reversed and the cause remanded for second-stage postconviction proceedings because he states the gist of a constitutional claim that he was subjected to an unfair plea proceeding under *Miller*. In supplemental briefing, he further argues that his postconviction petition states the gist of a constitutional claim that his plea was secured by the threat of a *de facto* life sentence.

¶ 23 In support of his argument, Robinson relies upon the Appellate Court, Fifth District, decision in *People v. Parker*, 2019 IL App (5th) 150192. In *Parker*, the State charged a 16-year-old defendant with first degree murder. *Id.* ¶ 2. The defendant entered a negotiated plea. *Id.* ¶ 3. The State agreed to ask for a sentence of imprisonment not to exceed 50 years. *Id.* At the plea hearing, the circuit court admonished the defendant that "the possible sentencing range was 20 to 60 years' imprisonment or, under certain circumstances, life imprisonment." *Id.* During the sentencing hearing, the circuit court again advised the defendant that "he could have been sentenced to life imprisonment or 20 to 60 years' imprisonment." *Id.* ¶ 4. The circuit court sentenced the defendant to 35 years in prison. *Id.* Subsequently, the defendant filed a motion for leave to withdraw his guilty plea, asserting that he "entered his guilty plea without sufficient understanding and contemplation of the serious nature of the consequences of entering a plea, that he felt pressured to enter his guilty plea by the advice that he received from his parents, and that his counsel briefly discussed the plea offer with him in the hallway of the courthouse while he was shackled and under guard, thus allowing him no privacy or sufficient time to discuss the offer." *Id.* ¶ 5.

¶ 24 During the hearing on the motion, the defendant withdrew the motion after being advised by the circuit court that withdrawing his guilty plea could result in a sentence of 20 to 80 years' or life imprisonment. *Id.* Almost nine years later, the defendant filed a *pro se* petition for postconviction relief, arguing that he was coerced into entering a guilty plea by his counsel and parents where his plea was based on a misrepresentation of the possible sentencing range. *Id.* ¶ 7. The appellate court affirmed the dismissal of the defendant's initial postconviction petition at the second stage of postconviction proceedings on the grounds the initial petition was not timely filed. *Id.* ¶ 8.

¶ 25 Fourteen years after the circuit court denied the defendant's motion to reconsider the sentence, the defendant in *Parker* filed a motion for leave to file a successive postconviction petition arguing in part that his sentence, "without consideration of his youth and its attendant characteristics, amounted to a *de facto* life sentence in violation of the eighth amendment *** as set forth in *** *Miller*." *Id.* ¶ 9. The circuit court denied the defendant's motion for leave to file a successive conviction, arguing that *Miller* was inapplicable because the defendant did not receive a mandatory life sentence. *Id.* The defendant appealed the denial of his motion for leave to file a successive postconviction petition and cited *Buffer* as additional authority, as Robinson does in his supplemental brief. In *Parker*, the appellate court stated:

> "[T]he defendant concede[d] that *Buffer* is adverse authority for his argument that his 35-year prison sentence constituted a *de facto* life sentence. However, he contends that *Buffer* supports his related argument that he should be allowed to challenge his guilty plea through a successive postconviction petition because he would not have pled guilty if he had understood the implications of the eighth amendment, [and] that he should be entitled to a new sentencing hearing where the trial court failed to consider his youth and its attendant characteristics when imposing the sentence ***." *Id.* ¶ 16.

The defendant argued:

"[H]e met the cause and prejudice test to file a successive postconviction petition because *Reyes* and *Buffer* had not been decided when he filed his initial postconviction petition and the application of *Buffer* changed the applicable sentencing range and eliminated his justifications for entering a guilty plea—*i.e.*, to avoid a natural-life sentence and for the State's recommendation to cap the sentence at 50 years—as neither sentence was constitutionally available absent evidence of incorrigibility." *Id.*

¶ 26        The *Parker* court agreed with the defendant, finding that he demonstrated cause because *Reyes* and *Buffer* had not yet been decided when he filed his initial postconviction petition. *Id.* ¶ 18. The court also found that the defendant had demonstrated prejudice because his guilty plea was influenced by the State's sentencing recommendation and repeated admonishments that he could receive a life sentence. *Id.* The defendant in *Parker* argued that he would not have pleaded guilty in exchange for a sentencing cap of 50 years had the guidelines in *Buffer* been established when he entered his guilty plea. *Id.* The appellate court reversed and remanded the circuit court's judgment denying the defendant's motion for leave to file a successive postconviction petition. *Id.* ¶ 20.

¶ 27        Here, in his supplemental brief, Robinson argues that, based on *Parker*'s factual similarities with this case, the same result reached in *Parker* should be mandated in this case. Robinson further argues that the same threat of a sentence in excess of 40 years, as in *Parker*, was present in this case and that he would not have pleaded guilty had he known of the youth-related factors set forth in *Miller*.

¶ 28        The State urges this court to reject this claim because Robinson's fully negotiated plea bars his claim, Robinson's "*Parker* claim" was not included in his *pro se* postconviction petition, and *Parker* is distinguishable from this case. We disagree.

¶ 29        Robinson's fully negotiated plea does not bar his claim in this case.

"Generally, due process requires that for a defendant to knowingly and voluntarily plead guilty, a defendant must be advised of the direct consequences of a guilty plea. [Citation.] As we have previously explained, a direct consequence of a guilty plea is one which has a definite, immediate and largely automatic effect on the range of a defendant's sentence. [Citation.] A trial court's obligation to ensure that a defendant understands the direct consequences of his plea traditionally encompasses those consequences that affect the defendant's sentence and other punishment that the circuit court may impose." *People v. Hughes*, 2012 IL 112817, ¶ 35.

¶ 30        The State argues that Robinson entered a fully negotiated plea deal, "which forecloses his claim of error" per *People v. Sophanavong*, 2020 IL 124337, ¶ 33. However, our supreme court has explained that "[i]n relation to a guilty plea *** 'waiver' refers to the ' "voluntary relinquishment of a known right." ' " *People v. Townsell*, 209 Ill. 2d 543, 547 (2004) (quoting *Hill v. Cowan*, 202 Ill. 2d 151, 158-59 (2002)). Robinson's rights under the eighth amendment in this context were not known at the time he pleaded guilty; therefore, he could not have voluntarily relinquished them.

¶ 31        In response to the State's argument that Robinson failed to raise his "*Parker* claim" at the proper time, Robinson asserts that this court must give his petition liberal construction, resulting in finding that the claim is contained within his argument in the postconviction petition. Our supreme court has stated a "requirement that a *pro se* petition be given a liberal

- 6 -

construction. Where defendants are acting *pro se*, courts should review their petitions 'with a lenient eye, allowing borderline cases to proceed.' [Citation.]" *Hodges*, 234 Ill. 2d at 21.

¶ 32 Under the "liberal construction" standard, we find that Robinson's initial claim that "the 17-year-old juvenile petitioner at the time of the offense was substantially denied due process and equal protection of the law, a fair sentencing and subjected to cruel and unusual punishment where *Miller*'s requirements were not taken into consideration before accepting his plea" was sufficient to allow consideration of the argument that his plea was secured under the threat that, if he proceeded to trial, he would be subject to an unconstitutional *de facto* life sentence per *Miller* and *Buffer*.

¶ 33 We find *Parker* persuasive and hold Robinson has stated the gist of a constitutional claim. Robinson's plea was influenced by the circuit court's admonishment of a *de facto* life sentence per *Buffer*, without first complying with the requirements stated in *Miller*. See *Parker*, 2019 IL App (5th) 150192, ¶ 18. The State argues that, unlike the defendant in *Parker*, "[Robinson] has never alleged that his fully negotiated plea was the result of any threats." However, Robinson does allege in his *pro se* petition that "the 17-year-old juvenile petitioner at the time of the offense was substantially denied due process and equal protection of the law, a fair sentencing and subjected to cruel and unusual punishment where *Miller*'s requirements were not taken into consideration before accepting his plea."

¶ 34 As stated by our supreme court in *Hodges*, "we have required only that a *pro se* defendant allege enough facts to make out a claim that is *arguably* constitutional for purposes of invoking the Act." (Emphasis added.) *Hodges*, 234 Ill. 2d at 9. In this case, Robinson has stated an arguable claim that his plea was secured by the threat of a *de facto* life sentence and that the court failed to consider the youth-related factors set forth in *Miller*.

¶ 35 We note that another division of the Appellate Court, First District, recently followed *Parker* under similar circumstances. See *People v. Brown*, 2021 IL App (1st) 160060-U, ¶ 35.

¶ 36 Having determined that Robinson's postconviction states the gist of a constitutional claim that his plea was secured by the threat of a *de facto* life sentence, we need not address the other issues raised in the petition. Under the plain language of the Act, the circuit court "must docket the entire petition, appoint counsel, if the petitioner is so entitled, and continue the matter for further proceedings in accordance with sections 122-4 through 122-6." (Emphasis omitted.) *People v. Rivera*, 198 Ill. 2d 364, 371 (2001).

¶ 37 Accordingly, the judgment of the circuit court of Cook County is reversed, and the case is remanded for further proceedings.

¶ 38 CONCLUSION

¶ 39 For the foregoing reasons, we reverse the circuit court's summary dismissal of Robinson's first-stage postconviction petition and remand for second-stage postconviction proceedings.

¶ 40 Reversed and remanded.