2022 IL App (1st) 170866-U
No. 1-17-0866
Order filed March 14, 2022

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

|  |  |  |
|---|---|---|
| PEOPLE FOR THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Cook County. |
|  | ) |  |
| Plaintiff-Appellee, | ) |  |
|  | ) | No. 04 CR 18382 |
| v. | ) |  |
|  | ) |  |
| PATRICK BUCKHAMAN, | ) | The Honorable |
|  | ) | Stanley J. Sacks, |
| Defendant-Appellant. | ) | Judge, presiding. |
|  | ) |  |

PRESIDING JUSTICE HYMAN delivered the judgment of the court.
Justices Walker and Coghlan concurred in the judgment.

**ORDER**

¶1 *Held*: Circuit court judgment denying Buckhaman leave to file a successive postconviction petition affirmed. Under *People v. Jones*, 2021 IL 126432, Buckhaman's 2005 plea to a 35-year sentence for the offense of first degree murder is not open to attack based on later legal developments in the law of juvenile sentencing.

¶2 At age 16, Patrick Buckhaman, who shot and killed Cardell Daviston, pled guilty to first degree murder. Before accepting his plea, the trial court had Buckhaman evaluated for his fitness to stand trial and sanity at the time of the offense. The evaluation revealed Buckhaman had an IQ of 63 and being treated with anti-psychotic and anti-depressant drugs. It also reported he had made

suicide attempts and experienced auditory hallucinations. The evaluator concluded, and the trial court agreed, that Buckhaman was fit to stand trial with medication. The trial court then accepted Buckhaman's guilty plea.

¶3 After several intermediate procedural steps, Buckhaman filed a successive postconviction petition. He claimed his 35-year sentence violated the eighth amendment to the United States Constitution and the proportionate penalties and due process clauses of the Illinois Constitution. And that the trial court failed to consider both his youth and mental impairment when imposing sentence. In support, he attached two evaluations describing his cognitive capabilities in detail. The trial court denied Buckhaman leave to file his petition.

¶4 While Buckhaman's appeal was pending, the Illinois Supreme Court decided *People v. Jones*, 2021 IL 126432, which held a "knowing and voluntary guilty plea waived any constitutional challenge" to a *de facto* life sentence agreed to before *Miller v. Alabama*, 567 U.S. 460 (2012) and the Illinois cases applying it, including *People v. Buffer*, 2019 IL 122327. As both of Buckhaman's claims are based on the unavailability of *Miller* or "*Miller*-type" relief, our Supreme Court's decision in *Jones* forecloses them. We must affirm under *Jones*.

¶5                                                   Background

¶6 Buckhaman pled guilty to first degree murder for the 2004 shooting death of Cardell Daviston. Before accepting his plea, the trial court ordered Buckhaman evaluated for fitness to stand trial, sanity at the time of the offense, and his ability to understand *Miranda* warnings. An evaluator initially concluded that Buckhaman was fit to stand trial and legally sane at the time of the offense, but he was unable to understand *Miranda* warnings. At a hearing, the trial court heard evidence that Buckhaman had an IQ of 63 and used anti-psychotic medication. The court found a *bona fide* doubt as to Buckhaman's fitness and ordered a fitness hearing.

2

¶7 Before the hearing, the trial court had Buckhaman evaluated again because the original findings had become stale. The same evaluator concluded Buckhaman was aware of the charges against him and the nature of the proceedings. The evaluator also concluded Buckhaman could assist in his defense and understood he could reject the plea and go to trial. Based on these findings, the evaluator concluded Buckhaman fit to stand trial as long as he remained medicated. The trial court adopted those conclusions.

¶8 The trial court then accepted Buckhaman's plea to the offense of first degree murder and sentenced him 20 years in prison with a mandatory 15-year enhancement for the use of a firearm.

¶9 About a month later, Buckhaman moved to withdraw his plea, alleging the plea was involuntary and that his counsel had been ineffective. The trial court denied the motion. We affirmed. *People v. Buckhaman*, 376 Ill. App. 3d 1136 (2007) (table) (unpublished order under Supreme Court Rule 23).

¶10 A few years later, Buckhaman filed a postconviction petition alleging: (i) the trial court should have held an evidentiary hearing to determine whether he was fit to plead guilty, and (ii) the 15-year firearm enhancement was unconstitutional as applied to him. The trial court denied the petition at the first stage. On appeal, appointed counsel moved to withdraw under *Pennsylvania v. Finley*, 481 U.S. 551 (1987). We granted counsel's motion to withdraw and, in so doing, affirmed the trial court's dismissal of Buckhaman's postconviction petition. *People v. Buckhaman*, No. 1-09-0212 (unpublished summary order under Supreme Court Rule 23(c)).

¶11 Buckhaman then filed a petition for relief from judgment (see 735 ILCS 5/2-1401 (West 2012)), raising several claims unrelated to those before us now. The trial court denied Buckhaman's petition. Appointed counsel again moved to withdraw on appeal under *Finley*. We

granted counsel's motion and affirmed. *People v. Buckhaman*, 2016 IL App (1st) 143710-U (unpublished summary order under Supreme Court Rule 23(c)).

¶12   In 2016, Buckhaman filed a motion for leave to file a successive postconviction petition, the petition we consider in this appeal. He argued that his "sentence violated the eighth amendment to the United States Constitution pursuant to *Miller v. Alabama* [567 U.S. 460 (2012)]" and the proportionate penalties clause of the Illinois Constitution. See Ill. Const. art. I, § 11. He maintained that his 35-year sentence was a *de facto* life sentence that the trial court imposed without considering his "youth, incorrigibility, and corruptibility." He also argued that the trial court "did not consider that [he] was mentally deficient with the intelligence of a ten-year old, and I.Q. of 63." Buckhaman attached a psychological evaluation and an adaptive behavior testing report to support his claims.

¶13   At the time of the evaluation, Buckhaman was 19 and enrolled in the 7th grade education program in the Department of Corrections. The report, from 2008, showed Buckhaman was "functioning within the Intellectually Deficient range" and "Mentally Impaired (MI) classification." The adaptive behavior testing, which took place when Buckhaman was 20, showed that his "adaptive behavior is comparable to that of the average individual at age 8 years 1 month. His functional independence is limited to very limited." The report shows that Buckhaman's community living, social interaction, communication, personal living, and motor skills were all either "limited" or "very limited."

¶14   The trial court denied Buckhaman's motion to file his successive postconviction petition because Buckhaman "did not receive a mandatory life sentence," meaning *Miller* did not apply to him. The court also relied on Buckhaman's agreement to a 20-year sentence, the minimum for

4

first-degree murder and, even with the 15-year enhancement, "well within the unenhanced range of 20-60 years."

¶15                                    Analysis

¶16    Buckhaman makes two arguments: (i) the trial court imposed his sentence "without consideration of his youth and significant intellectual and behavioral deficiencies," violating the principles in *Miller*; and, (ii) even if he does not have a viable *Miller* claim based on his age at the time of the offense, he is eligible for "*Miller*-type relief" under the proportionate penalties clause due to his "intellectual and behavioral disabilities." Based on these claims, Buckhaman argues the trial court erred in denying his motion for leave to file a successive postconviction petition. We disagree, finding Buckhaman's plea eliminates his ability to show prejudice under our supreme court's recent decision in *People v. Jones*, 2021 IL 126432.

¶17    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)) allows a petitioner to raise claims that the original trial or sentencing proceedings violated his or her constitutional rights. *People v. Pitsonbarger*, 205 Ill. 2d 444, 455 (2002). The Act contemplates the filing of only one postconviction petition. *Id.* at 456. Claims not raised in the initial petition are waived (*id.* at 459; see also 725 ILCS 5/122-3 (West 2018)) except where a defendant (i) shows cause for and prejudice from failing to raise the claim in the initial petition or (ii) makes a colorable claim of actual innocence. *Pitsonbarger*, 205 Ill. 2d at 459-60. We review the trial court's decision to deny leave to file a successive petition *de novo*. *People v. Edwards*, 2012 IL App (1st) 091651, ¶ 25.

¶18    Because Buckhaman does not claim he is innocent, he must "demonstrate[ ] cause for his *** failure to bring the claim in his *** initial post-conviction proceedings and [that] prejudice results from that failure." 725 ILCS 5/122-1(f) (West 2018). The Act defines "cause" as "an

5

objective factor that impeded [the petitioner's] ability to raise a specific claim during his or her initial post-conviction proceedings." *Id.* "Prejudice" involves a "demonstrati[on] that the claim not raised during [the petitioner's] initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." *Id.* The cause-and-prejudice test establishes a more onerous standard than that at the first pleading stage. *People v. Smith*, 2014 IL 115946, ¶ 35. Leave to file a successive petition should be denied where (i) the petitioner's claims "fail as a matter of law" or (ii) the petition and accompanying documents are "insufficient to justify further proceedings." *Id.*

¶19   The State argues Buckhaman's guilty plea waived both of his claims. We have held that plea agreements do not foreclose successive postconviction proceedings for *Miller* claims where the "plea was secured by the threat of a *de facto* life sentence." *People v. Robinson*, 2021 IL App (1st) 181653, ¶¶ 23, 33, 36 (discussing *People v. Parker*, 2019 IL App (5th) 150192).

¶20   The State has filed a motion to cite *Jones* as additional authority. We granted the State's motion and ordered Buckhaman to file a response "addressing the applicability of *Jones*." Buckhaman's response made no argument other than to say that he "does not object" to the State's new citation.

¶21   Having closely reviewed *Jones,* we find it forecloses Buckhaman's *Miller* claims. Like Buckhaman, the defendant in *Jones* pled guilty to first degree murder for a crime he committed at age 16. *Jones*, 2021 IL 126432, ¶¶ 3-4. He agreed to a 50-year sentence (*id.*, ¶ 4) and eventually filed a successive postconviction petition arguing that *Miller* "void[ed]" his plea because it rendered the statutory scheme governing his sentence unconstitutional. *Id.* ¶ 7. Our supreme court disagreed, focusing on whether the defendant "correctly understood the law that was applicable at the time petitioner entered into the plea agreement." *Id.*, ¶ 19.

6

¶22 Plea agreements, so the court reasoned, are imbued with uncertainty. First, pleas are like contracts and always involve some element of "bet[ting] on the future" of favorable developments in the law. *Id.*, ¶ 21. Second, pleas are based on calculating the risk of trial outcomes and the court would not speculate that a defendant "was doomed to be convicted of the most serious charges against him at trial and sentenced to *** life without parole." *Id.*, ¶ 25. Where a defendant enters a plea "to avoid a potential, not a certain, sentence," we must apply traditional waiver principles to "constitutional challenges based on subsequent changes in the applicable law." *Id.*, ¶ 26.

¶23 Buckhaman has not offered, and we do not see, a path out from under *Jones*'s reasoning. Even though the law of sentencing juveniles and the mentally disabled has indeed undergone a "revolution," as Buckhaman's counsel put it, our supreme court has now relegated Buckhaman's inability to rely on that revolution to a bad bet. *Id.*, ¶ 21. The same uncertainty rationale from *Jones* also applies to Buckhaman's plea. The State charged Buckhaman with less serious aggravated unlawful use of a weapon offenses. We cannot speculate that Buckhaman would have been convicted of murder after a trial; after all, the jury could have acquitted him of murder and convicted on the less serious offense. This means, according to *Jones*, that even if Buckhaman based his decision to plead guilty on the possibility of receiving a now-unconstitutional *de facto* life sentence, he cannot challenge the validity of his sentence because of the countervailing possibility that he may been successful either at trial or at a post-trial sentencing hearing. *Id.*, ¶ 25.

¶24 We are bound by *Jones*, and its reasoning inescapably applies to Buckhaman's claims. His pre-*Miller* plea forecloses a successive postconviction petition raising claims based on post-*Miller* law.

¶25 We emphasize that were it not for *Jones*, both of Buckhaman's claims would warrant further proceedings. As to Buckhaman's *Miller* claim based on his chronological age, we referenced the

7

Fifth District's conclusion that a defendant shows prejudice in the context of a motion to file a successive postconviction petition where they allege they would not have pled guilty had they known that a life sentence or *de facto* life sentence was "no longer a plausible threat." *Parker*, 2019 IL App (5th) 150192. We later applied that reasoning to first stage proceedings on initial postconviction petitions. *Robinson*, 2021 IL App (1st) 181653, ¶ 33 (finding arguable prejudice where plea "was influenced by the circuit court's admonishment of a *de facto* life sentence per [*People v.*] *Buffer*, [2019 IL 122327]"). We find this reasoning persuasive and would have adopted it but for *Jones*.

¶26    We also would have found, but for *Jones*, that Buckhaman's claim for "*Miller*-type" relief based on his intellectual deficiencies warranted further proceedings. Here the parties' dispute centers on the apparent conflict between this court's decision in *People v. Coty*, 2018 IL App (1st) 162383 (*Coty I*) and the Illinois Supreme Court's reversal of that decision in *People v. Coty*, 2020 IL 123972 (*Coty II*). This court had, in our supreme court's words, "extended the requirements of *Miller* and its progeny *** to adult offenders with intellectual disabilities." *Id.*, ¶ 17. The supreme court rejected that extension in large part because *Miller*'s focus on "the rehabilitative prospects of youth" did not apply to an intellectually disabled adult. *Id.*, ¶ 40.

¶27    Even this brief summary is enough to understand that *Coty II* does not (or, at least, did not) foreclose Buckhaman's *Miller*-type claim based on his intellectual deficiencies. First, and most obviously, Buckhaman was 16 at the time he committed his offense; the defendant in *Coty II* was 46. *Id.* The court in *Coty II* was also concerned about the defendant's sexual recidivism and found that the factors normally considered mitigating in the context of intellectually deficient defendants would be aggravating. *Id.*, ¶ 36. These are meaningful distinctions that would have brought

8

Buckhaman's claims out from under *Coty II* and, at the very least, would have warranted further development at later stages of postconviction proceedings.

¶28     We are bound to apply *Jones*. We echo, however, the concerns expressed in the dissent that the precise factors entitling a juvenile defendant to postconviction proceedings on a *Miller* claim are the same factors that undermine confidence in a knowing and voluntary plea. *Jones*, 2021 IL 126432, ¶ 64 (Neville, J. dissenting). Those concerns multiply for defendants, like Buckhaman, who were sentenced with both the diminished culpability of youth and diminished capacity.

¶29     Affirmed.